**W. DOW HAMM III CORPORATION & W. Dow Hamm III,**
Appellants,

v.

**MILLENNIUM INCOME FUND, L.L.C. & Jonathan Brinsden,**
Appellees.

**In re W. Dow Hamm III Corporation & W. Dow Hamm III, Relators.**

**Nos. 01–06–00499–CV, 01–06–00470–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

July 12, 2007.

---

Jeffery T. Nobles, N. Terry Adams Jr., Beirne, Maynard & Parsons, L.L.P., Houston, TX, for Relators.

Scott R. Link, Christian Smith & Jewell, Murry Fogler, Beck, Redden & Secrest, LLP, Paul J Franzetti, McDade, Fogler LLP, Patrick D. Mahoney, Beryl F. Mazella, Mahoney & Associates, Houston, TX, for Real Parties in Interest.

Panel consists of Justices TAFT, JENNINGS, and ALCALA.

## OPINION

TIM TAFT, Justice.

Appellants and relators, W. Dow Hamm III Corporation and W. Dow Hamm III

("the Hamm parties"), seek relief, both by interlocutory appeal and petition for writ of mandamus, from the trial court's order that, in pertinent part, stayed arbitration proceedings that the Hamm parties had initiated with the American Arbitration Association ("AAA"). We determine (1) whether interlocutory appeal or writ of mandamus is the proper method of appellate review and (2) whether the trial court erred in implicitly determining that the defenses to arbitration that appellees and real parties in interest, Millennium Income Fund, L.L.C. ("Millennium") and Jonathan Brinsden, raised should be decided by the court, rather than by the arbitrator. We dismiss the appeal and conditionally grant the petition for writ of mandamus.

## Background

In the late 1990s, the Hamm parties and Millennium formed seven limited partnerships to build and to operate Marriott hotels. Hamm later assigned a percentage of his interest to Brinsden, and Brinsden became a limited partner in four of the hotels; Brinsden's name did not appear in the partnership agreements' dissolution provisions, however. The partnership agreements contained identical arbitration provisions. The arbitration provisions were broadly worded to encompass "any claim, action, dispute or controversy of any kind [that] arises out of or relates to this Agreement or concerns any aspect of performance by any Partner under the terms of this Agreement. . . . "

In March 2003, Millennium sued the Hamm parties ("the instant lawsuit"), seeking a temporary restraining order and temporary injunctive relief to prevent the Hamm parties from "making further unauthorized payments to themselves and others" while the parties pursued the arbitration required by their partnership agreements.[1] The arbitration took place from July 14, 2003 until July 17, 2003. The arbitrator's award, among doing other things, ordered an accounting of the partnerships, expelled W. Dow Hamm III Corporation as the general partner, and ordered the limited partners to agree on a new general partner within 90 days or face dissolution of the partnerships ("the 2003 arbitration award"). The arbitrator appointed Scott Mitchell as the accountant.

On September 5, 2003, the trial court entered an order confirming the arbitration award. The Hamm parties then moved to vacate or to modify the 2003 arbitration award. The trial court denied the motion to vacate or to modify the judgment and arbitration award. The Hamm parties then appealed to this Court, challenging the trial court's final order of confirmation and the denial of their post-judgment motion to vacate or to modify the arbitration award. *See Hamm v. Millennium Income Fund, L.L.C.*, 178 S.W.3d 256, 259 (Tex.App.-Houston [1st Dist.] 2005, pet. denied), *cert. denied,* —— U.S. ——, 127 S.Ct. 297, 166 L.Ed.2d 154 (2006). We affirmed the judgment of the trial court. *See id.* at 272.

Under the confirmed 2003 arbitration award, W. Hamm III Corporation was expelled as general partner of the partnership, and a replacement general partner was to be selected within 90 days; if one could not be selected, Mitchell would wind up the partnerships and distribute the assets to the partners in accordance with the terms of the partnership agreements. The parties did not agree on a new general partner, and Mitchell, whom the trial court appointed as receiver, began the process of winding up the partnerships and distributing the assets by arranging for the sale of

---

1. Brinsden was not a party to that arbitration.

the hotels. After Mitchell had paid the mortgage loans for the hotels, approximately $30 million remained for distribution to the partners.

On March 29, 2006, Brinsden intervened in the lawsuit. Brinsden claimed that because of a mutual mistake, his name had been inadvertently omitted from the dissolution section of the partnership agreements. In his motion for leave to intervene, he stated that his "claims have neither been addressed by the Arbitrator or the Receiver or were never in issue until one month ago, [and] he is compelled to intervene in the case at bar so that an arbitrator may reform the Partnership Agreements to confirm the intent of the parties; and conduct an evidentiary hearing to calculate the worth of Brinsden's five percent ownership interest. . . ."

Mitchell then filed a first and amended "Receiver's Motion for Distribution and Receiver's Report on Distribution of Partnership Assets" ("the receiver's report"). In the receiver's report and his accompanying motion to distribute, Mitchell stated that there were many disputes among the parties regarding the terms of section 8.2 of the partnership agreements[2] and the distributions to be made upon the partnerships' dissolution and that "there is no agreement among the parties about how the assets of the partnerships should be distributed." Mitchell also stated that "Brinsden's ownership interest has not been determined in this litigation." Likewise, Mitchell noted that "Hamm Corp. is left out of the distribution of capital proceeds under § 8.2(b)(10) [of the partnership agreements' dissolution provisions]." Instead of trying to resolve the disputes and ambiguities, Mitchell provided four alternative distribution schedules to the trial court. Millennium and Brinsden objected to the receiver's report on various grounds.[3]

On May 4, 2006, the Hamm parties served an arbitration demand on appellees and filed the demand with the AAA, seeking to resolve the disputes about the distribution of assets under section 8.2 of the partnership agreements.[4] On May 5, the Hamm parties filed a motion to compel arbitration and to stay litigation in the instant lawsuit, seeking to stay the litigation pending arbitration, to stay ruling on the receiver's motion to distribute, and to compel arbitration on the disputed issues relating to section 8.2 of the partnership agreements. They sought to compel arbitration under the Federal Arbitration Act ("FAA")[5] and, only in the event that the trial court found the FAA not to apply, under the Texas General Arbitration Act ("TAA").[6]

---

2. Section 8.2 governed the distribution of the partnership assets upon dissolution.

3. In its objection, Millennium argued that the receiver's report had erroneously calculated and interpreted the partnership agreements' "Priority Return" provision. In his objection, Brinsden disagreed with Mitchell's delineation of the evidence of his entitlement to capital distribution and Mitchell's conclusion that Brinsden was a limited partner without any interest in the distribution of the capital proceeds.

4. On April 6, 2006, the Hamm parties also filed a new lawsuit in the 280th District Court of Harris County, Texas (trial court cause number 2006–21912), seeking a declaratory judgment to resolve the same issues ("the second lawsuit"). The record implies that the second lawsuit was eventually transferred to the trial court that rendered the complained-of order in the instant lawsuit, although no such transfer order appears in the record.

5. See 9 U.S.C.A. §§ 1–16 (West 2000 & Supp. 2006).

6. See TEX. CIV. PRAC. & REM.CODE ANN. §§ 171.001–.098 (Vernon 2005).

Millennium responded to the Hamm parties' motion to compel and filed a motion "to Stay Hamm's Collateral Attacks on This Court's Judgment." In its motion to stay, Millennium sought to stay both the arbitration instigated before the AAA and the second lawsuit. With regard to the Hamm parties' request for arbitration, Millennium argued that the arbitrator had already considered and determined everything on which the Hamm parties sought a second arbitration, so that res judicata barred a second arbitration. The Hamm parties responded, raising, among other arguments, that whether res judicata barred a second arbitration was a preliminary matter for the arbitrator to decide within the context of the second arbitration and was not a matter for the trial court's consideration. The Hamm parties also asserted, in the alternative, arguments on the merits of Millennium's res judicata defense.

On May 12, 2006, the trial court considered the Hamm parties' motion to compel arbitration, Millennium's motion to stay proceedings, and the receiver's motion to order distribution. The Hamm parties objected to the trial court's consideration of Millennium's motion to stay because all matters raised were for the arbitrator to decide, not the court, and they objected to the trial court's consideration of the receiver's motion to distribute until after arbitration had been conducted. The trial court overruled these objections.

After the hearing, the trial court granted Millennium's motion to stay by the order of which the Hamm parties' complain, staying both the second lawsuit and the AAA arbitration proceedings.[7] The trial court did not expressly rule on the Hamm parties' motion to compel arbitration. By separate order, the trial court approved the receiver's report, selected the first method of Mitchell's four alternative distribution schedules, and ordered distribution of all liquidation proceeds except for $800,000, which was reserved for any future expenses that the receiver might incur.

The Hamm parties perfected this interlocutory appeal and filed a petition for writ of mandamus, complaining of the trial court's May 12 order staying arbitration proceedings. Millennium has moved to dismiss the interlocutory appeal on the basis that only mandamus review is available, and this motion remains pending before the Court.

Pending resolution of the appellate proceedings, the Hamm parties moved for an emergency stay of the separate May 12 order of distribution. This Court denied the Hamm parties' motion. On May 19, 2006, Mitchell distributed all of the liquidation proceeds except the $800,000 that he had been ordered to reserve. Mitchell paid the Internal Revenue Service for taxes that the Hamm parties owed, satisfied the arbitrator's monetary judgments against the Hamm parties, and gave the Hamm parties a cashier's check for their portion of the distribution, which they accepted. Based on these distributions, Millennium argues, in its briefing in the mandamus proceeding, that the mandamus proceeding is moot because the proceeds have already been distributed. The Hamm parties respond, in part, that mootness is a matter for the arbitrator to de-

---

7. The Hamm parties do not complain of the portion of the order staying the second lawsuit; rather, they complain before this Court only of the portion of the order that stayed the AAA arbitration proceedings. Therefore, the propriety of the trial court's having stayed the second lawsuit is not before us. *See* Tex. Civ Prac. & Rem.Code Ann. § 51.014(a) (Vernon 1997 & Supp.2006) (not listing interlocutory order staying another lawsuit as one for which interlocutory appeal is granted); *id.* § 171.098 (Vernon 2005) (same).

cide, rather than for any court to adjudicate.

### Is Interlocutory Appeal or Mandamus the Proper Method of Review?

 On appeal, no party disputes that the FAA applies to the arbitration agreement. The arbitration agreement provides that the FAA will apply to their disputes. *See Allied–Bruce Terminix Co. v. Dobson,* 513 U.S. 265, 277–81, 115 S.Ct. 834, 839–41, 130 L.Ed.2d 753 (1995). Parties may validly agree to arbitrate under the FAA. *See In re Kellogg Brown & Root,* 80 S.W.3d 611, 617 (Tex.App.-Houston [1st Dist.] 2002, orig. proceeding) (concluding that FAA applied because parties had agreed to arbitrate under FAA). Additionally, appellant and appellees expressly agreed in the arbitration agreement that the transaction involved interstate commerce. *See Jack B. Anglin Co., Inc. v. Tipps,* 842 S.W.2d 266, 269–70, 272 (Tex. 1992) (stating that FAA applies when contract relates to interstate commerce); *see also* 9 U.S.C.A. § 2. Even when the FAA applies to an arbitration agreement, however, the parties may invoke the TAA to enforce the agreement, as long as nothing in the TAA would thwart the FAA's policies or goals in the particular context. *In re D. Wilson Constr. Co.,* 196 S.W.3d 774, 780 (Tex.2006).

We conclude that mandamus is the only means for reviewing the complained-of order. The order of which the Hamm parties complain is an interlocutory one granting a stay of arbitration proceedings on the basis of res judicata. That is not an interlocutory order for which the TAA or other Texas statute gives the right of interlocutory appeal. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a) (Vernon 1997 & Supp.2006) (not listing this type of order as one for which interlocutory appeal is available); *id.* § 171.098(a)(2) (Vernon 2005) (granting right of interlocutory appeal of order "granting an application to stay arbitration *made under Section 171.023.*") (emphasis added); *see also id.* § 171.023 (Vernon 2005) (allowing for application to stay arbitration *on basis that no agreement to arbitrate exists* ).

Nor can the granting of this order necessarily be considered the denial of the Hamm parties' motion to compel arbitration. The TAA makes an order "denying an application to compel arbitration" an appealable order. *See id.* § 171.098(a)(1). By granting Millennium's motion to stay the arbitration filed with the AAA on the basis of res judicata, the court no longer needed to rule on the Hamm parties' motion to compel arbitration; that is, the granting of Millennium's motion could have simply mooted the Hamm parties' motion, rather than necessarily having denied it implicitly. *Cf. Stolhandske v. Stern,* 14 S.W.3d 810, 815 (Tex.App.-Houston [1st Dist.] 2000, pet. denied) (holding that no appeal lay over trial court's interlocutory order vacating arbitrator's award and ordering new arbitration, even though opposing party had filed motion to confirm arbitration award, because "[t]he vacating of an arbitration award does not automatically deny a motion to confirm, but renders the consideration of an application to confirm moot.").

 We are strictly to construe the legislative bases for allowing interlocutory appeals, given that interlocutory appeals are in derogation of the general rule that only final judgments are appealable. *See, e.g., Bison Bldg. Materials, Ltd. v. Aldridge,* No. 01–05–00330–CV, —— S.W.3d ——, ——, 2006 WL 2641280, at *5 (Tex.App.-Houston [1st Dist.] Sept. 14, 2006, pet. filed) (concluding same in context of interlocutory appeal of order confirming in part and vacating in part arbitration award). Considering this general rule, and because we cannot necessarily construe an express granting of Millennium's motion to stay as an implicit denial of the Hamm parties'

motion to compel, we hold that no interlocutory appeal lies from the order staying arbitration proceedings.[8]

We sustain Millennium's motion to dismiss the Hamm parties' interlocutory appeal because no statute authorizes appeal from this type of interlocutory order. Mandamus is thus the only appropriate vehicle for challenging this order. We determine below whether the Hamm parties have shown their right to mandamus relief.

## Who Decides the Issues: the Trial Court or the Arbitrator?

Under part of issue two, the Hamm parties argue that the trial court erred by granting Millennium's motion to stay the second arbitration because the ground that that motion asserted—as well as various grounds asserted on appeal based on the post-order distribution—were matters for the arbitrator, rather than for the trial court, to decide.

### A. What the Standard of Review and Burden Are

▇▇▇ Mandamus is an extraordinary remedy, which will issue only to correct a clear abuse of discretion or a violation of a duty imposed by law when there is no adequate remedy by appeal. *In re Ford Motor Co.*, 165 S.W.3d 315, 317 (Tex.2005) (citing *In re Prudential Ins. Co.*, 148 S.W.3d 124, 135–36 (Tex.2004)); *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992). A trial court abuses its discretion when it errs in determining what the law is or in applying the law to the facts. *In re Bruce Terminix Co.*, 988 S.W.2d 702, 703 (Tex. 1998).

▇▇ A party seeking to compel arbitration has the initial burden both (1) to establish the arbitration agreement's existence and (2) to show that the claims asserted against the movant fall within the arbitration agreement's scope. *In re Kepka*, 178 S.W.3d 279, 286 (Tex.App.-Houston [1st Dist.] 2005, orig. proceeding). Here, however, no one has ever disputed the existence of an agreement to arbitrate: indeed, the Hamm parties and Millennium have already arbitrated under the same arbitration agreements, and Brinsden's motion for leave to intervene invoked the arbitration agreements. Neither does anyone dispute that the matters that the Hamm parties sought to send to arbitration—concerning the meaning of section 8.2 and its effect on the distribution of the partnerships' assets—fell within the scope of the arbitration agreements. *See id.* at 287 ("[W]hen, as here, the arbitration agreement uses broad language such as 'arising out of or in any way related or connected to' to define the scope of arbitrability[,] the moving party must show that the factual allegations against it 'touch matters' covered by the underlying agreement.") (quoting *Hou–Scape, Inc. v. Lloyd*, 945 S.W.2d 202, 205–06 (Tex.App.-Houston [1st Dist.] 1997, orig. proceeding)).

### B. Whether the Trial Court Abused Its Discretion

Rather than disputing the arbitration agreements' existence, or arguing whether the contractual matters that the Hamm parties sought to arbitrate fell within the arbitration provisions' scope, the parties joined the following four issues below:[9]

---

8. For this reason, we overrule the Hamm parties' issue one, in which they argue that "the trial court abused its discretion by denying a motion to compel arbitration of disputes that were subject to an arbitration agreement." The Hamm parties' motion to compel arbitration remains pending before the trial court.

9. On appeal, Millennium asserts that the Hamm parties waived the right to enforce arbitration by their substantial invocation of the judicial process to Millennium's detriment. Millennium then argues that whether the Hamm parties thereby waived the right to arbitrate was a matter for the court to determine, rather than for the arbitrator. Howev-

- whether Millennium's defense of res judicata was a matter for the court or the arbitrator to determine.
- assuming that the court was the proper entity to determine the res judicata defense, whether that defense was meritorious.
- whether the issue of estoppel based on Hamm's admissions in the 2003 arbitration was a matter for the court or the arbitrator to determine.
- assuming that the court is the proper entity to determine this estoppel defense, whether the Hamm parties were estopped from denying Brinsden's interests in the partnerships based on admissions that Hamm had made in the 2003 arbitration.

To these four issues the parties have added four more that are based on the receiver's distribution of partnership assets during pendency of the appellate proceedings:

- whether the issue of mootness based on distribution of proceeds is a matter for the court or the arbitrator to determine.
- assuming that the court is the proper entity to determine mootness, whether the Hamm parties' request for arbitration and its appellate challenges are mooted by the distribution.
- whether the issue of estoppel based on the Hamm parties' alleged acceptance of the distribution proceeds was a mat-

ter for the court or the arbitrator to determine.
- assuming that the court is the proper entity to determine this estoppel defense, whether the Hamm parties are estopped from "contest[ing] the distribution" because they accepted its benefits.

### 1. Res Judicata and Arbitrability

■ In part of issue two, the Hamm parties argue that whether res judicata bars a second arbitration is a matter for the arbitrator, rather than for the trial court. Millennium responds that, because the trial court confirmed the arbitration award, which thereby became its judgment, the trial court, rather than the arbitrator, properly granted the stay to protect its own judgment from attack.

■ In *Howsam v. Dean Witter Reynolds, Inc.*, the United States Supreme Court established the paradigm for determining what matters were to be decided by the arbitrator and what were to be decided by the court. 537 U.S. 79, 84–85, 123 S.Ct. 588, 592, 154 L.Ed.2d 491 (2002). The *Howsam* Court concluded that, unless an arbitration agreement provides otherwise, a court may determine only matters of substantive arbitrability, *i.e.*, whether a particular dispute falls within the scope of an arbitration provision, as well as the threshold question of whether that provi-

er, Millennium did not assert this type of waiver as a ground in its motion to stay, and the matter does not appear to have been litigated by anyone below. For example, no one expressly argued below as to how the Hamm parties' invocation of the judicial process was substantial for purposes of this type of waiver, and no one offered evidence as to how that invocation had been detrimental to Millennium. Accordingly, such waiver will not form the basis for this Court's disposition. *See Bates v. MTH Homes–Tex., L.P.*, 177 S.W.3d 419, 422 (Tex.App.-Houston [1st Dist.] 2005, no pet., orig. proceeding) (combined interloc-

utory appeal and original proceeding) ("The trial court's order does not state its grounds for granting Hammonds' motion to compel arbitration. Thus, *we review the grounds stated in Hammonds' motion* and affirm the trial court's order if any *of the grounds* are meritorious.") (emphasis added); *cf. Flores v. State*, 177 S.W.3d 8, 14 (Tex.App.-Houston [1st Dist.] 2005, pet. ref'd) ("We must sustain the trial court's [suppression] ruling if it is *reasonably supported by the record* and is correct on any theory of law *applicable to the case*.") (emphasis added), *cert. denied*, —— U.S. ——, 126 S.Ct. 2298, 164 L.Ed.2d 821 (2006).

sion is enforceable. *Id.* at 84, 123 S.Ct. at 592. In contrast, the Court also determined that the arbitrator, rather than the court, should determine matters of procedural arbitrability, *i.e.,* those matters that "'grow out of the dispute and bear on its final disposition.'" *Id.* (quoting *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 557, 84 S.Ct. 909, 918, 11 L.Ed.2d 898 (1964)). The *Howsam* Court offered as examples of matters of procedural arbitrability waiver, delay, time limits, notice, laches, estoppel, conditions precedent, and like defenses. *Id.* at 84–85, 123 S.Ct. at 592 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983) and REVISED UNIFORM ARBITRATION ACT § 6(c) & cmt. 2, 7 U.L.A. 12–13). The *Howsam* Court reasoned that the parties "would likely expect that an arbitrator would decide" such gateway, procedural-arbitrability matters because these matters grow out of and bear on the final disposition of the parties' dispute. *Id.* at 79, 123 S.Ct. at 590. That is, under the FAA, although courts are empowered to determine whether the dispute should be resolved in court or in arbitration, arbitrators are empowered "absent an agreement

to the contrary, to resolve disputes over whether a particular claim may be successfully litigated anywhere at all ... or has any substantive merits whatsoever." *Klay v. United Healthgroup, Inc.,* 376 F.3d 1092, 1109 (11th Cir.2004).

Res judicata can apply to bar re-arbitration of matters that have already been arbitrated. *See* Jarrod Wong, *Court or Arbitrator—Who Decides Whether Res Judicata Bars Subsequent Arbitration Under the Federal Arbitration Act?,* 46 Santa Clara L.Rev. 49, 54 (2005) [hereinafter "Wong"]. The question remains, however, whether the court or the arbitrator has the authority under the FAA to determine whether a later arbitration is barred by a prior one. The *Howsam* Court set out the test to apply, but it did not consider how that test applied to the defense of res judicata.

■ Although there is no Texas state authority on this issue, federal court decisions decided under the FAA resolve the dispute. The majority of federal courts has determined that whether a prior arbitration proceeding is res judicata of a later one is a matter for the arbitrator to determine, absent the arbitration agreement's providing that the defense of res judicata is not subject to arbitration.[10] That is,

---

**10.** *See Klay v. United Healthgroup, Inc.,* 376 F.3d 1092, 1109–10 (11th Cir.2004) (dictum); *Chiron Corp. v. Ortho Diagnostic Sys., Inc.,* 207 F.3d 1126, 1132–33 (9th Cir.2000); *Indep. Lift Truck Builders Union v. NACCO Materials Handling Group, Inc.,* 202 F.3d 965, 968 (7th Cir.2000); *John Hancock Mut. Life Ins. Co. v. Olick,* 151 F.3d 132, 139–40 (3rd Cir.1998); *Nat'l Union Fire Ins. Co. v. Belco Petroleum Corp.,* 88 F.3d 129, 135–36 (2nd Cir.1996); *Chicago Typographical Union No. 16 v. Chicago Sun–Times, Inc.,* 860 F.2d 1420, 1424 (7th Cir.1988) (dictum); *Transit Mix Concrete Corp. v. Local Union No. 282, Int'l Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.,* 809 F.2d 963, 969–70 (2nd Cir.1987); *Butler Armco Indep. Union v. Armco, Inc.,* 701 F.2d 253, 255–56 (3rd Cir.1983); *Little Six Corp. v. United Mine Workers of Am. Local Union No. 8332,* 701 F.2d 26, 29 (4th Cir.1983); *Boston Shipping Ass'n, Inc. v. Int'l Longshoremen's Ass'n,* 659 F.2d 1, 3 (1st Cir.1981); *Local 103 of Int'l Union of Electrical, Radio & Machine Workers, AFL–CIO v. RCA Corp.,* 516 F.2d 1336, 1340 (3rd Cir.1975); *New Orleans Steamship Ass'n v. Gen. Longshore Workers,* 626 F.2d 455, 468 (5th Cir.1980), *aff'd on other grounds,* 457 U.S. 702, 102 S.Ct. 2672, 73 L.Ed.2d 327 (1982); *Steris Corp. v. Int'l Union, Auto., Aerospace, Agric. Implement Workers of Am., Local No. 832,* 489 F.Supp.2d 501, 511–12 (W.D.Pa.2007); *Basin Elec. Pow. Coop. v. PPL Energy Plus, L.L.C.,* 313 F.Supp.2d 1039, 1042 (D.N.D.2004); *N. River Ins. Co. v. Allstate Ins. Co.,* 866 F.Supp. 123, 129 (S.D.N.Y.1994); *Teamsters Local 623 v. United Parcel Serv., Inc.,* 786 F.Supp. 509, 512–13 (E.D.Pa.1992); *Auto., Petroleum & Allied Indus. Employees Union, Local 618 v.*

under this authority, the res judicata effect of a prior arbitration award is a matter of procedural arbitrability that is not the court's province to decide.

■■■■■ The reasoning of these courts is as follows. Res judicata is an affirmative defense on the merits. *See Williams v. Houston Firemen's Relief & Ret. Fund*, 121 S.W.3d 415, 437 n. 21 (Tex.App.-Houston [1st Dist.] 2003, no pet.). Accordingly, it is a matter that "grow[s] out of the dispute and bear[s] on its final disposition," which under the *Howsam* Court's paradigm is one of procedural arbitrability. *Howsam*, 537 U.S. at 84, 123 S.Ct. at 592. That is, res judicata is a "component of the dispute on the merits and must be considered by the arbitrator, not the courts." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1132 (9th Cir.2000); *accord Nat'l Union Fire Ins. Co. v. Belco Petroleum Corp.*, 88 F.3d 129, 135–36 (2nd Cir.1996). Some of these courts have expressly rejected the argument that requiring an arbitrator to determine the res judicata effect of a prior arbitral award will allow prior arbitral decisions to be relitigated ad infinitum: they reason that the parties have the same ability to pursue a res judicata defense before the second arbitrator as they would have before a court. *See Local 103 of Int'l Union of Electrical, Radio & Machine Workers, AFL–CIO v. RCA Corp.*, 516 F.2d 1336, 1341 (3rd Cir.1975); *accord Little Six Corp. v. United Mine Workers of Am.*

*Gelco Corp.*, 581 F.Supp. 1155, 1158 (E.D.Mo. 1984); *see also Local 616, Int'l Union of Elec., Radio & Machine Workers, AFL–CIO v. Byrd Plastics, Inc.*, 428 F.2d 23, 26 (3rd Cir.1970). *But see San Francisco Elec. Contractors Ass'n v. Int'l Brotherhood of Elec. Workers, Local No. 6*, 577 F.2d 529, 533–34 (9th Cir.1978).

11. *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 137–38 (3rd Cir.1998); *In re Y & A Gr. Secs. Litig.*, 38 F.3d 380, 382–83 (8th Cir.1994); *Miller Brewing Co. v. Fort Worth Distrib. Co.*, 781 F.2d 494, 499 (5th Cir.1986).

*Local Union No. 8332*, 701 F.2d 26, 29 (4th Cir.1983); *Teamsters Local 623 v. United Parcel Serv., Inc.*, 786 F.Supp. 509, 513 (E.D.Pa.1992); *Auto., Petroleum & Allied Indus. Employees Union, Local 618 v. Gelco Corp.*, 581 F.Supp. 1155, 1158 (E.D.Mo.1984) ("If an arbitrator accepts Gelco's preclusion argument and the union continues to ... arbitrate the same grievance involving the same parties, then Gelco may sue in this Court to compel the union to abide by the arbitrator's decision that the prior award precludes further arbitration.").

■■■■ There is a limited exception to the above rule that res judicata is for the arbitrator. *See* Wong at 72–79; *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 139 (3rd Cir.1998) (using term "exception" to describe this situation). When the prior judgment that could have preclusive effect arose from a court proceeding—that is, when the first adjudication was in court, rather than by arbitration—the court may determine whether res judicata bars a subsequent arbitration.[11] We refer to this as the "prior-court-judgment exception." The rationale for the prior-court-judgment exception is that a court is inherently empowered to protect the integrity and finality of its own prior judgment, and this policy outweighs even the strong policy in favor of arbitration. *Olick*, 151 F.3d at 138.

The opinions adopting the "prior-court-judgment exception" mainly predate *Howsam*. We do not determine what effect, if any, *Howsam* may have had on this line of authority. *Compare* Wong at 72–79 (recognizing prior-court-judgment exception and arguing why exception makes sense) *with Klay*, 376 F.3d at 1101 (recognizing, on basis of *Howsam*, abrogation of pre-*Howsam* authority of *Kelly v. Merrill Lynch, Pierce, Fenner & Smith*, 985 F.2d 1067 (11th Cir.1993), in which Eleventh Circuit Court of Appeals had applied prior-court-judgment exception).

Millennium relies on the prior-court-judgment exception, despite the fact that the first adjudication was by arbitration, not by the court. Millennium implicitly reasons that because the trial court *confirmed* the 2003 arbitration award, that award had the effect of a judgment of the court, which the court could protect by injunction. *See* 9 U.S.C. § 13 (1997) (providing that judgment confirming arbitration award has same force and effect as court judgment); TEX. CIV. PRAC. & REM. CODE ANN. § 171.092(a) (Vernon 2005) (providing that order confirming arbitration award under TAA "may be enforced in the same manner as any other judgment or decree").

At least one federal court has expressly rejected the argument that Millennium makes. *See Chiron Corp.,* 207 F.3d at 1133. And other federal courts have applied the general procedural-arbitrability rule to a res judicata defense despite the prior arbitral award's having been confirmed. *See Belco Petroleum Corp.,* 88 F.3d at 135–36 (2nd Cir.1996) (not discussing prior-court-judgment exception, but applying general procedural-arbitrability rule despite prior award's confirmation); *Basin Elec. Pow. Coop. v. PPL Energy Plus, L.L.C.,* 313 F.Supp.2d 1039, 1042 (D.N.D.2004) (same). Simply put, the prior-court-judgment exception raises institutional concerns that are not present when the prior adjudication occurred at arbitration. *See Olick,* 151 F.3d at 139. This is true even when the prior arbitration award has been confirmed by court judgment. As the *Chiron* court explained:

> Relying on the language of [9 U.S.C. section 13], Ortho argues that we must treat the district court's confirmation of the arbitration award as if it were a judgment rendered in a judicial proceed-

ing. This approach, however, begs the question because the statute says nothing about which forum or *who* determines the effect of the judgment. Moreover, it obscures the fact that while a judgment entered upon a confirmed arbitration award has the same force and effect under the FAA as a court judgment for enforcement purposes, it is not wholly parallel to a court judgment for all purposes.

> Indeed, there are fundamental differences between confirmed arbitration awards and judgments arising from a judicial proceeding. Absent an objection on one of the narrow grounds set forth [in the FAA], the [FAA] requires the court to enter judgment upon a confirmed arbitration award, without reviewing either the merits of the award or the legal basis upon which it was reached. A judgment upon a decision or order rendered by the court at the conclusion of a judicial proceeding, by contrast, confirms the merits of that decision.... In sum, a judgment upon a confirmed arbitration award is qualitatively different from a judgment in a court proceeding, even though the judgment is recognized under the FAA for enforcement purposes.

*Chiron Corp.,* 207 F.3d at 1133–34 (emphasis in original; footnote omitted).[12] Moreover, if the judicial confirmation of an arbitration award were all that it took to bootstrap a prior arbitration award into the prior-court-judgment exception, the limited exception would swallow the general rule.

Accordingly, we hold that the trial court clearly abused its discretion to the extent that it based its stay on (1) a determination that res judicata barred arbitration on

---

12. The *Chiron* court's rationale applies equally well to arbitration awards confirmed under the TAA because the language of both statutes is materially similar in this regard. *Compare* 9 U.S.C. § 13 *with* TEX. CIV. PRAC. & REM CODE ANN. § 171.092(a).

the Hamm parties' request or on (2) a determination that a stay was necessary to protect the integrity of the trial court's order confirming the 2003 arbitration award.

We sustain this portion of issue two.

### 2. Mootness and Arbitrability

■ In its briefing in the mandamus proceeding, Millennium argues that the proceeds' distribution pursuant to the separate distribution order moots the underlying matters that the Hamm parties seek to send to arbitration and, thus, the mandamus proceeding.[13] Under part of issue two, the Hamm parties argue that whether the proceeds' distribution moots a second arbitration is itself a matter for the arbitrator, rather than for the trial court.

■ Although there is no Texas authority on this issue, federal authority does exist, and it consistently holds that whether matters sought to be arbitrated are in fact moot is a question of procedural arbitrability that is reserved for the arbitrator, absent the parties' agreement to the contrary.[14] Because the issue of whether subsequent events have rendered the Hamm parties' arbitration filing moot is for the arbitrator, that matter is not for any court to determine. Because a court may not determine whether the pending arbitration is moot, we may not hold that this mandamus proceeding is moot. Put another way, because the order staying arbitration prevented the matter of section 8.2's interpretation from going to arbitration, and because the arbitrator alone may determine whether the matter submitted for arbitration is moot, there is still a live controversy before this Court.

We sustain this portion of issue two.

### 3. Estoppel and Arbitrability

■ Under part of issue two, the Hamm parties also argue that Millennium's and Brinsden's separate estoppel defenses, set out above, are matters for the arbitrator, rather than for the trial court.

The United States Supreme Court has already indicated that questions of estoppel are matters of procedural arbitrability under the FAA that are for the arbitrator, rather than for the court. *See Howsam,* 537 U.S. at 84–85, 123 S.Ct. at 592 (quoting *Moses H. Cone Mem'l Hosp.,* 460 U.S. at 24–25, 103 S.Ct. at 941 and REVISED UNIFORM ARBITRATION ACT § 6(c) & cmt. 2, 7 U.L.A. 12–13); *accord Boateng v. Gen. Dynamics Corp.,* 473 F.Supp.2d 241, 250 (D.Mass.2007); *In re Global Constr. Co.,* 166 S.W.3d 795, 798 (Tex.App.-Houston [14th Dist.] 2005, orig. proceeding) (citing, in dictum, *Howsam's* mention of estoppel's being matter of procedural arbitrability). We follow *Howsam* and hold that the trial court clearly abused its discretion if it based its stay on a determination of the

---

**13.** Although not a party to the appeal, Mitchell, the receiver, has filed a brief arguing that the mandamus proceeding is moot except for the $800,000 remaining in the partnership accounts.

**14.** *See Oil, Chem. & Atomic Workers Int'l Union Loc. 5–391 v. Conoco, Inc.,* 64 Fed.Appx. 178, 184–85 (10th Cir.2003); *Local Union No. 370 of Int'l Union of Operating Eng'rs v. Morrison–Knudsen Co.,* 786 F.2d 1356, 1358 (9th Cir.1986); *W. Automatic Mach. Screw Co., Div. of Standard Screw Co. v. Int'l Union,* *United Auto., Aircraft & Agric. Implement Workers of Am. (UAW–AFL–CIO),* 335 F.2d 103, 106 (6th Cir.1964); *Galveston Maritime Ass'n v. S. Atlantic & Gulf Coast Dist., Int'l Longshoremen's Ass'n, Local 307,* 234 F.Supp. 250, 252 (S.D.Tex.1964); *see also Klay,* 376 F.3d at 1109–10 (noting that matters of "justiciability" are for arbitrator, absent agreement to contrary); *cf. Chicago Typographical Union No. 16,* 860 F.2d at 1424 (indicating in dictum that standing—which is component of subject-matter jurisdiction—is matter of procedural arbitrability).

estoppel grounds argued by Millennium and Brinsden.

We sustain this portion of issue two.

## C. Whether the Remedy by Appeal is Adequate

 The order staying the arbitration that the Hamm parties instigated with the AAA was clearly erroneous for the reasons stated above. We further hold that no adequate remedy by appeal exists for the order. First, the order is interlocutory because the receivership has not been wound up, and, for the reasons stated above, the order is not appealable under the TAA or other statute. Second, no one disputes that the partnership agreements' arbitration provisions encompass, in the abstract, the subject matter that the Hamm parties seek to arbitrate: a dispute concerning the meaning of the distribution provisions of the partnership agreements. Third, the Hamm parties have no means of arbitrating that dispute in the face of a stay of the arbitration that they instigated to determine that dispute. Accordingly, we hold that no adequate remedy by appeal exists from the portion of the trial court's May 12, 2006 order that stayed the arbitration initiated by the Hamm parties as result of their May 4, 2006 arbitration demand.

### Conclusion

We dismiss the interlocutory appeal in cause number 01–06–00499–CV. We conditionally grant mandamus relief in cause number 01–06–00470–CV. The trial court is ordered to vacate that portion of its May 12, 2006 order that stays any arbitration proceedings based on the Hamm parties' May 4, 2006 demand.[15] We are confident that the trial court will comply with our determination; writ will issue only if the court fails to so comply.

---

**15.** Again, the propriety of the portion of the complained-of order that stayed the second lawsuit is not before us, and mandamus will not issue for that aspect of the order. We also again note that because the trial court has yet to rule on the Hamm parties' motion to compel arbitration, that motion remains pending before the trial court.