Opinion issued December 4, 2009



      














In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-09-00509-CV & 01-09-00647-CV
__________
 
BHP BILLITON PETROLEUM (AMERICAS) INC., Appellant
 
V.
 
ATLANTIA OFFSHORE LIMITED, Appellee
 

 
 
On Appeal from the 215th District Court
Harris County, Texas
Trial Court Cause No. 2009-16355
 

 
 
O P I N I O N
          In this interlocutory appeal,


 appellant, BHP Billiton Petroleum (Americas)
Inc., challenges the trial court’s temporary injunction enjoining it from pursuing a
“second-filed arbitration” on its claim for breach of a construction contract against
appellee, Atlantia Offshore Limited. Concluding that the arbitration involved “the
same parties and same disputes” subject to an already pending arbitration proceeding,
the trial court stayed and abated this “second-filed arbitration.” BHP also challenges
the trial court’s order by petition for writ of mandamus.


 In three issues, BHP
contends that the trial court abused its discretion in enjoining it “from pursuing its
contractual right to arbitrate its $67 million construction defect claim before
arbitrators selected pursuant to the arbitration agreement,” in staying the arbitration
initiated by BHP and allowing the other “special purpose arbitration panel to extend
its jurisdiction to matters not submitted” to it, and in “refusing to enjoin the limited
purpose arbitration panel from arbitrating disputes not submitted” to it. In its petition
for writ of mandamus, BHP also contends that it does not have an adequate remedy
by appeal.  
          We dismiss the interlocutory appeal and deny the petition. 
Factual and Procedural Background
          In July 2005, Atlantia entered into an Engineering and Construction Services
Agreement (the “Agreement”) with BHP to engineer and construct an offshore
platform to be erected in the Gulf of Mexico. Schedule 1 of the Agreement, entitled
“Dispute Resolution,” contains the following dispute resolution procedures:
          1.       SETTLEMENT OF DISPUTES
 
          The Parties agree that any dispute, which arises hereunder, shall
be resolved in accordance with the dispute resolution procedures
(“Procedure”) set forth in this Schedule 1. This Procedure shall apply
to any claim or dispute arising under or related to any of the Contract
Documents (whether arising in contract, tort or otherwise, and whether
arising at law or in equity), including (a) any dispute regarding the
construction, interpretation, performance, validity or enforceability of
any provision of the Contract Documents or whether either Party is in
compliance with, or breach of, any provisions of the Contract
Documents, and (b) the applicability of this Procedure to a particular
dispute (a “Dispute”). The provisions of this Procedure shall be the
exclusive method of resolving Disputes.
 
          Section 1.1 of Schedule 1, entitled “Negotiation to Resolve Disputes,” provides
that, “[i]f a Dispute arises, the Parties shall attempt to resolve such Dispute” through
senior management negotiations conducted promptly and in good faith and, if
unsuccessful, twenty days later, “then either Party may submit such Dispute to
binding arbitration under this Procedure by giving written notice to the other Party
(an “Arbitration Notice”).” Schedule 1 further provides, 
1.2     Selection of Arbitrators
 
a.       Any arbitration conducted under this Procedure shall be heard by
three (3) arbitrators (the “Arbitrators”), each qualified by his or
her education, experience and training to resolve the disputed
matters, selected in accordance with Clause 1.2. . . . 
 
b.       Each party shall appoint one (1) arbitrator within (30) days of the
filing of the arbitration, and the two arbitrators so appointed shall
select the presiding arbitrator within thirty (30) days after the
latter of the two arbitrators has been appointed by the Parties to
the Dispute. If a Party to the Dispute fails to appoint its Party-appointed arbitrator or the two Party-appointed arbitrators cannot
reach an agreement on the presiding arbitrator . . . , then the
American Arbitration Association . . . shall serve as the
appointing authority and shall appoint the remaining of the three
arbitrators not yet appointed in accordance with its then-current
Commercial Arbitration Rules (“Rules”) . . . 
 
1.3     Conduct of Arbitration
 
The Arbitrators shall expeditiously (if possible, within 90 days after its
selection) hear and decide all matters concerning the Dispute. . . . The
Arbitration shall be governed by the U.S. Federal Arbitration Act and
conducted in accordance with the Rules (excluding rules governing the
payment of arbitration, administrative or other fees or expenses to the
Arbitrators or the AAA), to the extent that such Rules do not conflict
with the terms of this Contract. The Arbitrators shall have the power .
. . (b) to grant injunctive relief and enforce specific performance. . . .
The decision of the Arbitrators (which shall be rendered in writing) shall
be final, not subject to appeal, binding upon the Parties, and may be
enforced in any court of competent jurisdiction. . . . 
 
          On March 18, 2008, BHP sent Atlantia a notice of breach of the Agreement
based upon alleged defects in the platform, and BHP demanded that Atlantia perform
remedial or warranty work. On October 14, 2008, BHP sent Atlantia another letter,
referencing its prior notice of breach and asserting that it had incurred $28 million in
costs for certain services associated with the warranty work performed by Atlantia as
well as other damages attributable to the delays in the work, and BHP demanded that
Atlantia reimburse it for its costs. BHP stated that its demand also triggered the
parties’ obligations to commence senior management negotiations under the
Agreement. 
          Pursuant to BHP’s letter and the Agreement, the parties commenced senior
management negotiations, but the negotiations were unsuccessful. On March 16,
2009, BHP sent a letter to Atlantia acknowledging that the parties had not been able
to resolve their dispute, and BHP stated its intent to “instruct external counsel to
proceed with drawing upon” a letter of credit (the “LOC”) and “to commence
arbitration proceedings” under the Agreement. 
          On March 17, 2009, Atlantia filed an application for a temporary restraining
order and temporary injunction in the trial court. In this application, Atlantia stated
that it had been obligated by the Agreement to furnish a $9 million LOC to secure its
performance. Atlantia acknowledged that a dispute had arisen between the parties
over payment of expenses incurred by BHP during the course of Atlantia’s warranty
work, but Atlantia contended that BHP’s threat to immediately draw on the LOC,
prior to a decision on the merits of the contractual dispute, violated the Agreement
or was based upon fraud. Atlantia further contended that, although the merits of this
dispute were subject to arbitration under the rules of the AAA, it would take at least
thirty days to constitute a tribunal, which Atlantia averred would be too late “to
address the matter at hand.”
          Atlantia stated that the “issues to be determined in the arbitration” would be to
what extent Atlantia was responsible for BHP’s costs and whether BHP had the right
to draw on the LOC before Atlantia’s liability for the costs had been established. 
Atlantia asserted that, to draw on the LOC, BHP would be required to certify
Atlantia’s failure to perform its obligations, such a certification would be false and
fraudulent, and such action would cause Atlantia immediate and irreparable harm.
Thus, Atlantia requested injunctive relief enjoining BHP from presenting the LOC
“until 30 days after an arbitral tribunal capable of addressing this issue is further
constituted.”
          On the same day that Atlantia filed its application, the trial court conducted a
hearing and entered an “Agreed Standstill Order” (the “ASO”), which was signed by
both BHP and Atlantia. The trial court ordered the parties to use their “best efforts”
through March 25, 2009 “to constitute an arbitral tribunal pursuant to the Agreement”
to “determine the issue of whether [BHP] may draw on the LOC.” It also ordered
Atlantia not to appeal “any decision by the arbitral tribunal on the issue of whether
[BHP] may draw on the LOC.” The trial court further ordered that, if a tribunal could
not be constituted or could not determine “the issue” before March 25, 2009, the trial
court would rule on Atlantia’s application for a temporary restraining order on March
25, 2009 or would further extend the ASO. The trial court prohibited BHP from
presenting the LOC to the bank until March 26, 2009 and both parties from filing any
other proceeding, except arbitration, “with respect to the matters at issue” in
Atlantia’s application for a temporary restraining order, “and, specifically [BHP’s]
ability to draw down on the LOC,” prior to April 30, 2009. Finally, the trial court
mandated that Atlantia would extend the LOC to a new expiration date of April 30,
2009. 
          On March 19, 2009, BHP sent Atlantia a letter designating, pursuant to section
1.2 of Schedule 1 of the Agreement and in accordance with the ASO, William
Andrews as an arbitrator. In this letter, BHP cited Andrews’s “extensive experience
in construction disputes, both onshore and offshore” as being “valuable in resolving
the captioned matter,” which referred to Atlantia’s application for injunctive relief. 
Atlantia also designated its arbitrator, and he, along with Andrews, selected the
presiding arbitrator. 
          On March 23, 2009, after appointing its arbitrator under the ASO, BHP filed
a response to Atlantia’s application in the trial court, asserting that Atlantia’s
discussion of the merits of the contractual dispute was irrelevant to the discrete issue
of the enforcement of the LOC. On March 24, 2009, the arbitration panel, consisting
of the arbitrators appointed by the parties and the presiding arbitrator (the “private
arbitration” panel), conducted a hearing, and, on March 25, 2009, issued an order
denying Atlantia’s application for a temporary restraining order. However, the
private arbitration panel further stated in its order that it determined that it had
“jurisdiction over the disputes arising out of and related to the [Agreement]” and that
“a prompt hearing on the merits of the parties’ dispute should be arranged.” The
panel set a scheduling hearing for March 30, 2009, and noted that it intended to
provide an “expeditious arbitration.” 
          On March 27, 2009, BHP sent the panel a letter stating that it had not formally
submitted the merits of its contractual dispute to arbitration and had not submitted its
arbitration demand to the AAA. BHP further asserted that the private arbitration
panel had been expeditiously convened only to handle the limited issue of the LOC
and that, although the panel might ultimately be designated to arbitrate the merits of
the contractual dispute, the parties had not designated the panel to handle the
contractual dispute at that time. On March 30, 2009, at the scheduling hearing, BHP
again objected to the private arbitration panel’s jurisdiction to rule on the contractual
disputes or any other claims other than Atlantia’s application for a temporary
restraining order regarding the LOC. The private arbitration panel denied BHP’s
objection, and then set various deadlines for the arbitration. On April 13, 2009, BHP
filed a formal objection to the private arbitration panel’s jurisdiction and, subject to
its objection, its affirmative claims. The panel again denied BHP’s jurisdictional
objection, stating that it had determined that it had jurisdiction to decide the current
disputes between the parties, “including those for which Atlantia’s LOC was called
following” its order denying Atlantia a temporary restraining order.
          On April 8, 2009, BHP filed a separate demand for arbitration against Atlantia
with the AAA (the “AAA arbitration”) for its affirmative claims concerning the
alleged defective and negligent design of the platform, and BHP sought damages for
reimbursement of costs and deferred production in the amount of $67 million. 
Atlantia filed an objection with the AAA to stop this separate arbitration proceeding,
but, on April 21, 2009, the AAA issued a letter stating that BHP met the filing
requirements and that, absent an agreement by the parties or a court order, the AAA
arbitration would proceed.



          On April 22, 2009, Atlantia filed another application for a temporary
restraining order and temporary injunction in the trial court, this time seeking an order
enjoining BHP from pursuing the AAA arbitration and staying that arbitration
“because the matters in controversy” were “already the subject of a previously filed”
private arbitration and that the private arbitration panel had “already issued a binding
decision that it has jurisdiction over such matters.”


 The trial court granted Atlantia
a temporary restraining order. BHP then filed in the trial court an answer and
“counterclaim for permanent injunctive relief” in which it asked the trial court to find
that the private arbitration panel did not have jurisdiction to hear the merits of the
contractual dispute and that BHP may continue with the AAA arbitration. BHP also
requested injunctive relief to enjoin the private arbitration on the basis that it was
being deprived of its right to arbitrate the dispute under the procedures set forth in the
Agreement. BHP cited the provisions in the Agreement that allowed a certain number
of days to select an arbitrator qualified by education, experience, and training. BHP
complained that it did not have the opportunity to evaluate and select an arbitrator
based upon his knowledge of maritime law, vessel charter agreements, the
remediation operation, and deferred production, all of which BHP contended were
important parts of its $67 million claims. 
          After a hearing, the trial court issued a temporary injunction enjoining BHP
from pursuing its AAA arbitration and staying the AAA arbitration. In the order, the
trial court stated that the Agreement requires “all disputes (including disputes over
whether the dispute resolution procedure applies to a particular dispute) be submitted
to binding arbitration,” “[a]n arbitral panel has been constituted and has determined
that it has jurisdiction to decide the merits of the disputes between the parties,” the
panel’s decision is binding on the parties, BHP’s “second-filed” AAA arbitration
involves the same parties and subjects of dispute as the private arbitration and is
unauthorized, and that, without injunctive relief, Atlantia would be irreparably
harmed by being forced to arbitrate in a manner inconsistent with the Agreement and
being subjected to a significant risk of inconsistent outcomes. 
Jurisdiction
          BHP has filed both an interlocutory appeal and a petition for writ of
mandamus. In its appeal, BHP asserts that we have jurisdiction to determine whether
the trial court erred in enjoining BHP from pursuing the AAA arbitration, staying the
AAA arbitration, and not enjoining the private arbitration. See Tex. Civ. Prac. &
Rem. Code Ann. § 51.014(a)(4) (Vernon 2008) (providing for interlocutory appeal
from order granting or refusing to grant temporary injunction). BHP also asserts that
we have jurisdiction to consider its challenges to the trial court’s order, as well as the
trial court’s “implicit” refusal to enjoin the private arbitration, through its petition for
writ of mandamus. 
          Atlantia agrees that BHP’s interlocutory appeal of the temporary injunction is
proper. Atlantia also agrees that BHP may seek mandamus relief to challenge the trial
court’s order enjoining BHP from pursuing the AAA arbitration and staying that
arbitration. However, Atlantia disputes that BHP can appeal the trial court’s implicit
refusal to grant a temporary injunction because it argues that BHP only pleaded for
permanent injunctive relief. 
          The Federal Arbitration Act (“FAA”)


 applies to the Agreement in this case. 
See W. Dow Hamm III Corp. v. Millennium Income Fund, L.L.C., 237 S.W.3d 745,
751 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (noting that arbitration agreement
provided that FAA would apply to dispute and stating that “[p]arties may validly
agree to arbitrate under the FAA”). Although both parties agree that we have dual
bases for jurisdiction to review the trial court’s express order enjoining BHP from
pursuing the AAA arbitration and staying that arbitration, we conclude that the actual
order issued by the trial court is one staying the AAA arbitration.


 Texas courts have
held that a party, like BHP, seeking relief pursuant to the FAA from an order staying
arbitration should pursue relief by way of petition for writ of mandamus. See
Haddock v. Quinn, 287 S.W.3d 158, 168 (Tex. App.—Fort Worth 2009, pet. filed)
(citing In re D. Wilson Constr. Co., 196 S.W.3d 774, 780 (Tex. 2006) (orig.
proceeding); In re Valero Energy Corp., 968 S.W.2d 916, 917 (Tex. 1998) (orig.
proceeding); Jack B. Anglin Co. v. Tipps, 842 S.W.2d 266, 272 (Tex. 1992) (orig.
proceeding)). Our Court has also recently stated that generally “no interlocutory
appeal lies from the order staying arbitration proceedings.” W. Dow Hamm III Corp.,
237 S.W.3d at 752. Therefore, we dismiss for want of jurisdiction BHP’s
interlocutory appeal of the trial court’s order prohibiting it from pursuing the AAA
arbitration and staying that arbitration, and we proceed to determine whether BHP is
entitled to mandamus relief from the trial court’s order staying the AAA arbitration.


 
See Haddock, 287 S.W.3d at 168. 
          Mandamus is an extraordinary remedy, which will issue only to correct a clear
abuse of discretion or a violation of a duty imposed by law when there is no adequate
remedy by appeal. In re Ford Motor Co., 165 S.W.3d 315, 317 (Tex. 2005) (citing
In re Prudential Ins. Co. of Am., 148 S.W.3d 124, 135–36 (Tex. 2004)); Walker v.
Packer, 827 S.W.2d 833, 839–40 (Tex. 1992). A trial court abuses its discretion
when it errs in determining what the law is or in applying the law to the facts. In re
Bruce Terminix Co., 988 S.W.2d 702, 703 (Tex. 1998).
Order Staying the AAA Arbitration
          In its first two issues, BHP argues that the trial court abused its discretion in
enjoining it “from pursuing its contractual right to arbitrate its $67 million
construction defect claim before arbitrators selected pursuant to the arbitration
agreement” and in staying the AAA arbitration, because the Agreement contains
procedures requiring that disputes be presented to arbitrators with the necessary
education, experience, and training, and the trial court has denied it the right to
arbitrate its claims in accordance with the Agreement. BHP asserts that the trial court
has allowed the private arbitration panel “to extend its jurisdiction to matters not
submitted” to it. 
          The issues presented here are atypical of those present in most appeals and
mandamus actions related to arbitration. First, both BHP and Atlantia agree that all
the matters in contention, including the LOC and the merits of the contractual dispute,
are subject to arbitration under the Agreement. Second, after Atlantia filed its first
application for injunctive relief, both Atlantia and BHP entered into the ASO, which
expressly referred to the Agreement and instructed the parties “to constitute an
arbitral tribunal pursuant to the Agreement” on an expedited basis. We conduct our
review of the trial court’s order staying the AAA arbitration with these unique
procedural characteristics in mind. 
          The parties essentially ask us to consider whether the trial court was authorized
to stay the AAA arbitration based upon its findings that the AAA arbitration was an
unauthorized second-filed arbitration involving the same parties and subjects of
dispute as the private arbitration and that the private arbitration panel made a binding
decision that it had jurisdiction to hear the contractual merits dispute. The parties
refer us to no Texas authority which would allow a trial court to enter an order
staying an arbitration based upon the argument that it is duplicative of a previously
filed, competing arbitration. However, other federal courts applying the FAA have
concluded that a trial court possesses the power, in certain circumstances, to stay a
competing arbitration. In L.F. Rothschild & Co. v. Katz, the plaintiff, citing 9 U.S.C.
§ 4 of the FAA, moved for an order compelling the defendants to proceed with an
arbitration before the New York Stock Exchange (“NYSE”) and staying a competing
arbitration that the defendants had commenced with the Chicago Board Options
Exchange (“CBOE”). 702 F. Supp. 464, 465 (S.D.N.Y. 1988). The parties agreed
that the plaintiff’s claims were subject to arbitration, and both the NYSE and the
CBOE were authorized to arbitrate the dispute. Id. at 466. The court stated, 
Here, each party has commenced an arbitration proceeding that, standing
alone, would be valid under the Arbitration Agreement. However, to
permit both proceedings to continue would require the parties to pursue
the same claims or defenses in two separate forums, resulting in the
duplication of the arbitrators' efforts and risking inconsistent outcomes.
 
To avoid these problems, only one of these proceedings should go
forward. As a general rule, the forum where an action is first filed takes
priority over the forum where a subsequent action arising out of the
same facts is filed. 
 
Id. at 466–67.
          Applying the “first-filed” principle, the court determined that the NYSE was
the appropriate arbitrator because the plaintiff had commenced that proceeding first
and the defendants had commenced the CBOE arbitration only after learning of the
competing proceeding. Id. 
          After determining that the NYSE would be appropriate arbitrator, the court
then examined its authority to stay the competing, second filed arbitration. Id. The
court recognized that “[a]lthough the Federal Arbitration Act authorizes a district
court to stay litigation, it remains silent regarding a court’s authority to stay
arbitration.” Id. (citing 9 U.S.C. § 3). However, the court concluded that this
“silence” did not leave district courts without such power. Id. The court, quoting
persuasive authority, stated,
The Act expressly provides federal courts with the power to order
parties to a dispute to proceed to arbitration where arbitration is called
for by the contract. 9 U.S.C. § [4]. To allow a federal court to enjoin an
arbitration proceeding which is not called for by the contract interferes
with neither the letter nor the spirit of this law. Rather, to enjoin a party
from arbitrating where an agreement to arbitrate is absent is the
concomitant of the power to compel arbitration where it is present. . . .
In fact, were the law read to prevent a court from enjoining an
arbitration proceeding it might actually interfere with arbitration—in the
unusual case, arguably present here, where one such arbitration
proceeding may interfere with another.

Id. at 467 (quoting Societe Generale de Surveillance, S.A. v. Raytheon European
Mgmt. & Sys. Co., 643 F.2d 863 (1st Cir. 1981)). Based upon this authority, the court
concluded that when the parties contracted to arbitrate a dispute “surely they did not
anticipate two-or perhaps more-rival arbitrations arising out of the same controversy”
and that, after the first arbitration proceeding was already in place, the second-filed
arbitration “was not authorized by the contract.” Id. at 468. The court stated that, in
these circumstances, section 4 of the FAA empowered a court to stay the
unauthorized arbitration. Id.
          No Texas court has yet applied the first-filed principles articulated in Katz to
stay competing arbitration proceedings, but Texas courts recognize the first-filed
principles in the litigation context. See Perry v. Del Rio, 66 S.W.3d 239, 252 (Tex.
2001) (“[W]hen cases involving the same subject matter are brought in different
courts, the court with the first-filed case has dominant jurisdiction and should
proceed, and the other cases should abate.”). Here, it is undisputed that all of the
matters in dispute between BHP and Atlantia are governed by the FAA and are
subject to arbitration under the Agreement. The instant circumstances are comparable
to those in Katz, and the analysis in Katz persuasive. Accordingly, we conclude that
the trial court, under section 4 of the FAA, was authorized to enter an order staying
the AAA arbitration. 
          We now turn to consider whether the trial court properly determined that the
AAA arbitration was a competing, duplicative arbitration that involved the same
subject matter and controversy as the private arbitration.
          In its March 18, 2008 letter to Atlantia, BHP claimed that Atlantia had
breached the Agreement, and BHP demanded that Atlantia perform warranty work. 
In its October 14, 2008 letter, BHP claimed $28 million in reimbursable costs that it
had allegedly incurred, and it demanded that Atlantia reimburse it for these costs. It
also indicated that there were additional damages associated with the resulting delay.
Thus, BHP expressly triggered the parties’ obligations under the Agreement to
commence senior management negotiations to resolve this Dispute. The record
before us conclusively shows that the Dispute, as that term is used in the Agreement,
that was being submitted for senior management negotiations prescribed for by the
parties involved the merits of the parties’ entire contractual dispute; the LOC dispute
had not yet arisen. 
          Following the parties’ unsuccessful senior management negotiations of this
Dispute, which was conducted pursuant to the Agreement, BHP notified Atlantia of
its intent “to commence arbitration proceedings” under the Agreement. Although the
letter also expressed BHP’s intent to “instruct external counsel” to draw upon the
LOC to recover at least some of its damages associated with this Dispute, the letter
unequivocally indicated BHP’s intent to commence arbitration of the entire Dispute. 
In response, Atlantia filed its first application for injunctive relief, in which it
specifically referenced not only the LOC but also the merits of the contractual
dispute. It also specifically stated that the “issues to be determined in the arbitration”
would be both the contractual dispute and the LOC dispute. Atlantia took the
position that the LOC dispute and the contractual merits dispute could not be
separated, and Atlantia requested injunctive relief enjoining BHP from presenting the
LOC “until 30 days after an arbitral tribunal capable of addressing this issue is further
constituted.” Because Atlantia contended that the LOC dispute and the contractual
merits dispute could not be separated, Atlantia did not merely seek injunctive relief
prior to any expedited arbitral consideration of the LOC issue, but also injunctive
relief prior to any decision of the contractual merits dispute. 
          BHP was not obligated to enter into the ASO. However, in paragraph 2 of the
ASO, both BHP and Atlantia agreed to, between March 17, 2009 and March 25,
2009, use their best efforts “to constitute an arbitral tribunal pursuant to the
Agreement and to have the arbitration tribunal determine the issue of whether [BHP]
may draw on the LOC.” (Emphasis added). Thus, paragraph 2 obligated BHP to
make efforts to both constitute a panel under the Agreement and to have the panel
make a determination on the LOC issue by March 25. Although most of the
paragraphs of the ASO refer to the LOC, nothing in the ASO indicated that the
private arbitration panel constituted thereunder, and pursuant to the Agreement,
would be dissolved following the determination of the LOC dispute or that the private
arbitration panel would be voided if the panel could not come to a determination of
the LOC issue by March 25. Instead, the parties simply agreed that, in that instance,
the trial court would rule on Atlantia’s application for a temporary restraining order
or would further extend the ASO as necessary. 
          BHP’s March 19, 2009 letter designating William Andrews pursuant to section
1.2 of Schedule 1 of the Agreement and in accordance with the ASO belies BHP’s
contention that it designated Andrews solely to consider the LOC issue. In its letter,
BHP stated that Andrews was being appointed to resolve “the captioned matter,”
which was Atlantia’s application for injunctive relief. By its plain terms, this
application related both to the LOC and the contractual merits dispute. The bottom
line is that, at the time the private arbitration panel was constituted by the parties
pursuant to both the Agreement and the ASO, the parties had already conducted
senior management negotiations under the Agreement regarding the contractual
merits dispute, BHP had expressed its intent to instruct its counsel to commence
arbitration of the contractual merits dispute, and Atlantia had filed an application for
injunctive relief, which included its contention that the LOC could not be resolved
without a determination of the merits of the contractual dispute. The Agreement does
not contemplate the setting up of a special or limited purpose arbitration panel that
would terminate upon March 25 or immediately after a determination of the LOC
issue. Instead, it contemplates a panel constituted under the Agreement, which by the
Agreement’s terms, is set up to consider and address the Dispute. At the time the
panel was constituted, the Dispute was not limited to the LOC. 
          BHP’s demand in the AAA arbitration reflects that BHP seeks to arbitrate the
same matters at issue in the private arbitration. This is, of course, why BHP sought
injunctive relief to stay the private arbitration. But, we have concluded that trial court
did not err in determining that the private arbitration panel had jurisdiction to hear the
contractual merits dispute. Because the contractual merits dispute was already the
subject of the pending private arbitration, we hold that the trial court did not abuse
its discretion in entering an order staying the AAA arbitration. 
          In so holding, we note that BHP has not been denied its contractual right to
arbitrate its $67 million construction defect claim before arbitrators selected pursuant
to the Agreement. BHP complains that the trial court’s order has the effect of
denying its contractual rights to have sufficient time to vet any potential arbitrators
and ensure that they possess specialized knowledge regarding the types of claims it
seeks to bring. Although Schedule 1 provides that the appointed arbitrators shall be
qualified by education, experience, and training to resolve the disputed matters,
nothing in the ASO affected this provision. As discussed above, at the time the
parties signed the ASO and appointed their arbitrators on an expedited basis, the
disputed matters were the LOC and the related contractual merits dispute. 
Furthermore, although Schedule 1 provides parties with thirty days to appoint their
arbitrators, BHP signed the ASO and appointed its arbitrator on an expedited basis. 
BHP’s argument that it is being deprived of certain contractual rights is unavailing.



          We overrule BHP’s first two issues.


 
Conclusion
          We dismiss the interlocutory appeal and deny BHP’s petition for writ of
mandamus. 
 
 
                                                                        Terry Jennings
                                                                        Justice

Panel consists of Justices Jennings, Higley, and Sharp.