**BASIN ELECTRIC POWER COOPERATIVE,**
Plaintiff,

v.

**PPL ENERGY PLUS, L.L.C., and PPL Montana, L.L.C., Defendants.**

No. A1–04–010.

United States District Court,
D. North Dakota,
Southwestern Division.

April 19, 2004.

John W. Morrison, Jr., Fleck, Mather & Strutz, Ltd., Bismarck, ND, for Plaintiff.

Shane Douglas Peterson, Crowley, Haughey, Hanson, Toole & Dietrich, Williston, ND, Paul J. Lawrence, Philip M. Guess, Preston, Gates and Ellis LLP, Seattle, WA, for Defendant.

## ORDER GRANTING MOTION TO COMPEL ARBITRATION

HOVLAND, Chief Judge.

Before the Court is the Defendants' Motion to Compel Arbitration and to Dismiss or Stay Action Pending Arbitration filed on March 12, 2004. For the reasons set forth below, the motion is granted.

### I. *BACKGROUND*

Basin Electric Power Cooperative (Basin Electric) and the Montana Power Company entered into a "Power Purchase Agreement" (Agreement) on May 13, 1994. Pursuant to the terms of the Agreement, Basin Electric agreed to sell energy generated by its Antelope Valley Station to Montana Power between November 1 and April 30 of each year commencing in 1996 and ending in 2010. The energy was to be made available and delivered to Montana

Power at the "Point of Delivery," which was defined by the Agreement as follows:

The point at the Crossover Switching Station of the Western Area Power Administration where Montana Power's transmission system is interconnected with the transmission system of the Western Area Power Administration, or the Western Area Power Administration's Yellowtail Substation or such other point(s) as may be agreed upon by the Parties.

The Agreement also contained the following arbitration clause:

*Any controversies arising out of or relating to this Agreement which cannot be resolved through negotiations among the Parties within thirty (30) days after inception of the matter in dispute shall, upon demand of either Party, involved in the controversy, be submitted, pursuant to the rules of the American Arbitration Association, to an Arbitrator having demonstrated expertise in the matter submitted.* If the Parties cannot mutually agree upon such Arbitrator, then upon petition of either Party, such Arbitrator shall be appointed by the Chief Judge of the United States for the District of North Dakota. The Arbitration shall be conducted in Bismarck, North Dakota pursuant to (Ch 32–29 of the North Dakota Century Code), as the same may be amended time to time. The Arbitrator shall render his decision in writing not later than thirty (30) days after the matter has been submitted to him, and such decision shall be conclusive and binding upon the Parties. (emphasis added)

In October 1996, a dispute arose between the parties over the Point of Delivery. Montana Power asserted that Basin Electric was obligated to deliver at Points of Delivery not specified in the Power Purchase Agreement and Basin Electric disagreed. Unable to resolve their differ-ences, Montana Power informed Basin Electric by a letter dated October 30, 1996, that it was rescinding the Agreement. Basin Electric responded by filing an action in federal court to compel arbitration or, in the alternative, to compel specific performance of the Agreement or award damages for an anticipatory repudiation of the Agreement. Basin Electric also commenced arbitration proceedings in accordance with the Agreement. Montana Power resisted arbitration on the grounds that it had valid counterclaims that were not subject to the Agreement's arbitration clause.

On March 20, 1997, this Court compelled arbitration and in the interim stayed the pending litigation. Thereafter, the parties submitted the dispute to arbitration. The arbitrator (Jon Lotis) entered his arbitration award on December 17, 1997. The award included the following findings:

1. Under Subsection 1.1.23 of the [Agreement], Crossover and Yellowtail are the only two delivery points specified in the contract. Under this section, further delivery point(s) may be added, but only upon the agreement of the parties.

2. Under the [Agreement], [Basin Electric] is not obligated to provide delivery points to [Montana Power] on the eastern system.

3. Section 1.1.23 of the [Agreement] is unambiguous.... The only two points of delivery specified in the [Agreement] are Crossover and Yellowtail. The [Agreement] provides 'for such other point(s) as may be agreed upon by the parties.' The quoted language evinces the parties' intent that both would have to agree for further delivery points to be added. Thus, [Basin Electric] could not compel [Montana Power] to accept delivery at points other than Cross-

over and Yellowtail. Nor could [Montana Power] compel Basin to make deliveries to points other than Crossover or Yellowtail. Consent is required in both instances.

4. The [Agreement] delivery point language does not constitute a legally binding promise of either [Montana Power] or [Basin Electric] to add delivery points beyond those specifically identified. To pass judgment then on the propriety of either party's 'good faith' assumes a preexisting contractual duty of some sort to add delivery points. That duty does not exist.

The Court confirmed the arbitrator's decision in an Order of January 9, 1998.

On December 17, 1999, Montana Power assigned its obligations under the Power Purchase Agreement to the defendant, PPL Montana, L.L.C. In 2003, PPL Montana requested that Basin Electric deliver energy to an alternative delivery point ostensibly because of outages that had occurred along one of the delivery paths specified in the Agreement. PPL Montana also proposed to take delivery of the energy at the Antelope Valley Station bus. However, Basin Electric refused.

On April 25, 2003, PPL Montana submitted a Demand for Arbitration to Basin Electric, asserting that "Basin Electric's refusal to deliver electricity to the Antelope Valley Station bus and refusal to negotiate an alternative delivery point constitutes a breach of the [Power Purchase Agreement] ... and the obligation of good faith and fair dealing." On January 15, 2004, PPL Energy Plus, L.L.C., acting as PPL Montana's agent, submitted another Demand for Arbitration to Basin Electric.

Basin Electric filed the above-entitled action on February 5, 2004. Basin Electric seeks to temporarily and permanently enjoin PPL Energy Plus and PPL Montana from arbitrating any alleged disputes relating to (1) the delivery of power to points other than those specified in the Power Purchase Agreement or (2) the negotiation of any alternative delivery points under the Agreement. The basis for Basin Electric's action is that the attempted arbitration is barred by the December 1997 arbitration award under the doctrines of res judicata and collateral estoppel.

On March 12, 2004, PPL Energy Plus and PPL Montana filed a Motion to Compel Arbitration and to Dismiss or Stay Action Pending Arbitration. On April 13, 2004, Basin Electric filed a response to the motion.

## II. LEGAL DISCUSSION

The defendants, PPL Energy Plus and PPL Montana, contend the broad language of the Agreement's arbitration clause covers the present dispute and the matter must be submitted for arbitration. The Defendants contend, among other things, that the present dispute is factually distinguishable from the 1997 dispute because one of the specified Points of Delivery is currently inoperable during the Agreement's delivery period *and* the marginal cost of delivery to the proposed alternate Point of Delivery is less.

Basin Electric argues that it is best left to the Court to address issues of res judicata and collateral estoppel. Although Basin Electric recognizes that the Power Purchase Agreement contains an arbitration clause, it relies on a case entitled *In re Y & A Group Securities Litigation,* 38 F.3d 380, 382 (8th Cir.1994), for the proposition that the Court should not have to stand by while the Defendants simply reassert claims that have already been resolved. The specific issue the Court must resolve is whether the current dispute the Defendants seek to arbitrate falls within the scope of the Power Purchase Agreement's arbitration clause.

It is clear and undisputed that the Agreement contains a valid arbitration clause which is binding upon Basin Electric and the Defendants. The arbitration clause expressly provides for the arbitration of "[A]ny controversies arising out of or relating to this Agreement which cannot be resolved through negotiations among the parties. . . . " The scope of the arbitration clause is extremely broad and the clause is certainly susceptible of an interpretation that covers the current dispute. Further, there are no provisions in the Agreement which specifically exclude from arbitration previously settled disputes. *See Intern. Ass'n. of Machinists v. Republic Airlines,* 829 F.2d 658, 660 (8th Cir. 1987).

■ It is well-established that federal courts are to interpret arbitration clauses liberally and any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Barker v. Golf U.S.A., Inc.,* 154 F.3d 788, 793 (8th Cir.1998) *cert. denied* 525 U.S. 1068, 119 S.Ct. 796, 142 L.Ed.2d 659 (1999). When there exists an express agreement to arbitrate, it is presumed that the parties agreed to submit disputes to arbitration unless there is a clear intent the parties did not want to arbitrate the matter. *Teamsters Local Union No. 688 v. Indus. Wire,* 186 F.3d 878, 881 (8th Cir.1999). The gist of Basin Electric's claim is premised on two preclusion defenses—res judicata and collateral estoppel. Basin Electric essentially contends that the Defendants' grievance is similar to the 1996 dispute between Basin Electric and Montana Power and that the Defendants should be prohibited from asserting a similar grievance. The Defendants contend the two disputes are distinct for several reasons, including the fact that the specified delivery point is inoperable during the Agreement's delivery period, and that the Defendants proposed an alternative delivery point at a lower cost to Basin Electric.

■ The Court expressly finds that the parties' current disagreement constitutes a "controversy arising out of or relating to this Agreement." The Court further finds that Basin Electric's preclusion defense is a part of the merits of the current dispute and is itself a question for arbitration and not a question for this Court to determine. In other words, the question of the preclusive effect of a prior arbitration award is itself arbitrable under the Power Purchase Agreement. *See Auto., Petro., & Allied Ind. Emp. v. Gelco Corp.,* 581 F.Supp. 1155, 1158 (E.D.Mo.1984).

It is clear and undisputed that Basin Electric contemplated that disputes arising under the Power Purchase Agreement, including those involving the Points of Delivery, would be submitted to arbitration. Basin Electric initiated the earlier arbitration. The arbitrator's decision became the basis for this Court's Order of January 9, 1998. The issues currently raised by the Defendants are arguably similar to those addressed in the earlier arbitration. However, it is the arbitrator who should be afforded an opportunity to determine what preclusive effect, if any, the previous decision may have.

The Court finds that this dispute is appropriate for arbitration under the broad language of the arbitration clause in the Power Purchase Agreement. There are no exclusions in the Agreement and no language that would even arguably exclude previously settled disputes from arbitration. It is clear that *any* controversies arising out of or relating to the Agreement are arbitrable. More important, when there is an express agreement to arbitrate, there is a presumption that the parties agreed to submit the dispute to arbitration absent a clear intent to the contrary. Any doubt concerning the scope of arbitrable

issues should be resolved in favor of arbitration. Accordingly, the Court **GRANTS** the Defendants' Motion to Compel Arbitration (Docket No. 4) and the case is dismissed.

**IT IS SO ORDERED.**