Opinion issued July 12, 2007













In The

Court of Appeals

For The

First District of Texas






NO. 01-06-00499-CV






W. DOW HAMM III CORPORATION & W. DOW HAMM III, Appellants


V.


MILLENNIUM INCOME FUND, L.L.C. & JONATHAN BRINSDEN,
Appellees






On Appeal from the 61st District Court

Harris County, Texas

Trial Court Cause No. 2003-13955






* * *






NO. 01-06-00470-CV






IN RE W. DOW HAMM III CORPORATION & W. DOW HAMM III,
Relators






Original Proceeding on Petition for Writ of Mandamus





O P I N I O N


 Appellants and relators, W. Dow Hamm III Corporation and W. Dow Hamm
III ("the Hamm parties"), seek relief, both by interlocutory appeal and petition for
writ of mandamus, from the trial court's order that, in pertinent part, stayed arbitration
proceedings that the Hamm parties had initiated with the American Arbitration
Association ("AAA"). We determine (1) whether interlocutory appeal or writ of
mandamus is the proper method of appellate review and (2) whether the trial court
erred in implicitly determining that the defenses to arbitration that appellees and real
parties in interest, Millennium Income Fund, L.L.C. ("Millennium") and Jonathan
Brinsden, raised should be decided by the court, rather than by the arbitrator. We
dismiss the appeal and conditionally grant the petition for writ of mandamus.

Background


 In the late 1990s, the Hamm parties and Millennium formed seven limited
partnerships to build and to operate Marriott hotels. Hamm later assigned a
percentage of his interest to Brinsden, and Brinsden became a limited partner in four
of the hotels; Brinsden's name did not appear in the partnership agreements'
dissolution provisions, however. The partnership agreements contained identical
arbitration provisions. The arbitration provisions were broadly worded to encompass
"any claim, action, dispute or controversy of any kind [that] arises out of or relates
to this Agreement or concerns any aspect of performance by any Partner under the
terms of this Agreement . . . ."

 In March 2003, Millennium sued the Hamm parties ("the instant lawsuit"),
seeking a temporary restraining order and temporary injunctive relief to prevent the
Hamm parties from "making further unauthorized payments to themselves and others"
while the parties pursued the arbitration required by their partnership agreements. (1) 
The arbitration took place from July 14, 2003 until July 17, 2003. The arbitrator's
award, among doing other things, ordered an accounting of the partnerships, expelled
W. Dow Hamm III Corporation as the general partner, and ordered the limited
partners to agree on a new general partner within 90 days or face dissolution of the
partnerships ("the 2003 arbitration award"). The arbitrator appointed Scott Mitchell
as the accountant. 

 On September 5, 2003, the trial court entered an order confirming the
arbitration award. The Hamm parties then moved to vacate or to modify the 2003
arbitration award. The trial court denied the motion to vacate or to modify the
judgment and arbitration award. The Hamm parties then appealed to this Court,
challenging the trial court's final order of confirmation and the denial of their post-judgment motion to vacate or to modify the arbitration award See Hamm v.
Millennium Income Fund, L.L.C., 178 S.W.3d 256, 259 (Tex. App.--Houston [1st
Dist.] 2005, pet. denied), cert. denied, 127 S. Ct. 297 (2006). We affirmed the
judgment of the trial court. See id. at 272.

 Under the confirmed 2003 arbitration award, W. Hamm III Corporation was
expelled as general partner of the partnership, and a replacement general partner was
to be selected within 90 days; if one could not be selected, Mitchell would wind up
the partnerships and distribute the assets to the partners in accordance with the terms
of the partnership agreements. The parties did not agree on a new general partner,
and Mitchell, whom the trial court appointed as receiver, began the process of
winding up the partnerships and distributing the assets by arranging for the sale of the
hotels. After Mitchell had paid the mortgage loans for the hotels, approximately $30
million remained for distribution to the partners.

 On March 29, 2006, Brinsden intervened in the lawsuit. Brinsden claimed that
because of a mutual mistake, his name had been inadvertently omitted from the
dissolution section of the partnership agreements. In his motion for leave to
intervene, he stated that his "claims have neither been addressed by the Arbitrator or
the Receiver or were never in issue until one month ago, [and] he is compelled to
intervene in the case at bar so that an arbitrator may reform the Partnership
Agreements to confirm the intent of the parties; and conduct an evidentiary hearing
to calculate the worth of Brinsden's five percent ownership interest . . . ." 

 Mitchell then filed a first and amended "Receiver's Motion for Distribution and
Receiver's Report on Distribution of Partnership Assets" ("the receiver's report"). 
In the receiver's report and his accompanying motion to distribute, Mitchell stated
that there were many disputes among the parties regarding the terms of section 8.2 of
the partnership agreements (2) and the distributions to be made upon the partnerships'
dissolution and that "there is no agreement among the parties about how the assets of
the partnerships should be distributed." Mitchell also stated that "Brinsden's
ownership interest has not been determined in this litigation." Likewise, Mitchell
noted that "Hamm Corp. is left out of the distribution of capital proceeds under
§ 8.2(b)(10) [of the partnership agreements' dissolution provisions]." Instead of
trying to resolve the disputes and ambiguities, Mitchell provided four alternative
distribution schedules to the trial court. Millennium and Brinsden objected to the
receiver's report on various grounds. (3)

 On May 4, 2006, the Hamm parties served an arbitration demand on appellees
and filed the demand with the AAA, seeking to resolve the disputes about the
distribution of assets under section 8.2 of the partnership agreements. (4) On May 5, the
Hamm parties filed a motion to compel arbitration and to stay litigation in the instant
lawsuit, seeking to stay the litigation pending arbitration, to stay ruling on the
receiver's motion to distribute, and to compel arbitration on the disputed issues
relating to section 8.2 of the partnership agreements. They sought to compel
arbitration under the Federal Arbitration Act ("FAA") (5) and, only in the event that the
trial court found the FAA not to apply, under the Texas General Arbitration Act
("TAA"). (6) 

 Millennium responded to the Hamm parties' motion to compel and filed a
motion "to Stay Hamm's Collateral Attacks on This Court's Judgment." In its motion
to stay, Millennium sought to stay both the arbitration instigated before the AAA and
the second lawsuit. With regard to the Hamm parties' request for arbitration,
Millennium argued that the arbitrator had already considered and determined
everything on which the Hamm parties sought a second arbitration, so that res
judicata barred a second arbitration. The Hamm parties responded, raising, among
other arguments, that whether res judicata barred a second arbitration was a
preliminary matter for the arbitrator to decide within the context of the second
arbitration and was not a matter for the trial court's consideration. The Hamm parties
also asserted, in the alternative, arguments on the merits of Millennium's res judicata
defense.

 On May 12, 2006, the trial court considered the Hamm parties' motion to
compel arbitration, Millennium's motion to stay proceedings, and the receiver's
motion to order distribution. The Hamm parties objected to the trial court's
consideration of Millennium's motion to stay because all matters raised were for the
arbitrator to decide, not the court, and they objected to the trial court's consideration
of the receiver's motion to distribute until after arbitration had been conducted. The
trial court overruled these objections.

 After the hearing, the trial court granted Millennium's motion to stay by the
order of which the Hamm parties' complain, staying both the second lawsuit and the
AAA arbitration proceedings. (7) The trial court did not expressly rule on the Hamm
parties' motion to compel arbitration. By separate order, the trial court approved the
receiver's report, selected the first method of Mitchell's four alternative distribution
schedules, and ordered distribution of all liquidation proceeds except for $800,000,
which was reserved for any future expenses that the receiver might incur.

 The Hamm parties perfected this interlocutory appeal and filed a petition for
writ of mandamus, complaining of the trial court's May 12 order staying arbitration
proceedings. Millennium has moved to dismiss the interlocutory appeal on the basis
that only mandamus review is available, and this motion remains pending before the
Court. 

 Pending resolution of the appellate proceedings, the Hamm parties moved for
an emergency stay of the separate May 12 order of distribution. This Court denied
the Hamm parties' motion. On May 19, 2006, Mitchell distributed all of the
liquidation proceeds except the $800,000 that he had been ordered to reserve.
Mitchell paid the Internal Revenue Service for taxes that the Hamm parties owed,
satisfied the arbitrator's monetary judgments against the Hamm parties, and gave the
Hamm parties a cashier's check for their portion of the distribution, which they
accepted. Based on these distributions, Millennium argues, in its briefing in the
mandamus proceeding, that the mandamus proceeding is moot because the proceeds
have already been distributed. The Hamm parties respond, in part, that mootness is
a matter for the arbitrator to decide, rather than for any court to adjudicate.

Is Interlocutory Appeal or Mandamus the Proper Method of Review?


 On appeal, no party disputes that the FAA applies to the arbitration agreement.
The arbitration agreement provides that the FAA will apply to their disputes. See
Allied-Bruce Terminix Co. v. Dobson, 513 U.S. 265, 277-81, 115 S. Ct. 834, 839-41
(1995). Parties may validly agree to arbitrate under the FAA. See In re Kellogg
Brown & Root, 80 S.W.3d 611, 617 (Tex. App.--Houston [1st Dist.] 2002, orig.
proceeding) (concluding that FAA applied because parties had agreed to arbitrate
under FAA). Additionally, appellant and appellees expressly agreed in the arbitration
agreement that the transaction involved interstate commerce. See Jack B. Anglin Co.,
Inc. v. Tipps, 842 S.W.2d 266, 269-70, 272 (Tex.1992) (stating that FAA applies
when contract relates to interstate commerce); see also 9 U.S.C.A. § 2. Even when
the FAA applies to an arbitration agreement, however, the parties may invoke the
TAA to enforce the agreement, as long as nothing in the TAA would thwart the
FAA's policies or goals in the particular context. In re D. Wilson Constr. Co., 196
S.W.3d 774, 780 (Tex. 2006).

 We conclude that mandamus is the only means for reviewing the complained-of
order. The order of which the Hamm parties complain is an interlocutory one
granting a stay of arbitration proceedings on the basis of res judicata. That is not an
interlocutory order for which the TAA or other Texas statute gives the right of
interlocutory appeal. See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a) (Vernon
1997 & Supp. 2006) (not listing this type of order as one for which interlocutory
appeal is available); id. § 171.098(a)(2) (Vernon 2005) (granting right of
interlocutory appeal of order "granting an application to stay arbitration made under
Section 171.023.") (emphasis added); see also id. § 171.023 (Vernon 2005) (allowing
for application to stay arbitration on basis that no agreement to arbitrate exists). 

 Nor can the granting of this order necessarily be considered the denial of the
Hamm parties' motion to compel arbitration. The TAA makes an order "denying an
application to compel arbitration" an appealable order. See id. § 171.098(a)(1). By
granting Millennium's motion to stay the arbitration filed with the AAA on the basis
of res judicata, the court no longer needed to rule on the Hamm parties' motion to
compel arbitration; that is, the granting of Millennium's motion could have simply
mooted the Hamm parties' motion, rather than necessarily having denied it implicitly. 
Cf. Stolhandske v. Stern, 14 S.W.3d 810, 815 (Tex. App.--Houston [1st Dist.] 2000,
pet. denied) (holding that no appeal lay over trial court's interlocutory order vacating
arbitrator's award and ordering new arbitration, even though opposing party had filed
motion to confirm arbitration award, because "[t]he vacating of an arbitration award
does not automatically deny a motion to confirm, but renders the consideration of an
application to confirm moot."). 

 We are strictly to construe the legislative bases for allowing interlocutory
appeals, given that interlocutory appeals are in derogation of the general rule that
only final judgments are appealable. See, e.g., Bison Bldg. Materials, Ltd. v.
Aldridge, No. 01-05-00330-CV, 2006 WL 2641280, at *5 (Tex. App.--Houston [1st
Dist.] Sept. 14, 2006, pet. filed) (concluding same in context of interlocutory appeal
of order confirming in part and vacating in part arbitration award). Considering this
general rule, and because we cannot necessarily construe an express granting of
Millennium's motion to stay as an implicit denial of the Hamm parties' motion to
compel, we hold that no interlocutory appeal lies from the order staying arbitration
proceedings. (8)

 We sustain Millennium's motion to dismiss the Hamm parties' interlocutory
appeal because no statute authorizes appeal from this type of interlocutory order. 
Mandamus is thus the only appropriate vehicle for challenging this order. We
determine below whether the Hamm parties have shown their right to mandamus
relief.

Who Decides the Issues: the Trial Court or the Arbitrator?


 Under part of issue two, the Hamm parties argue that the trial court erred by
granting Millennium's motion to stay the second arbitration because the ground that
that motion asserted--as well as various grounds asserted on appeal based on the
post-order distribution--were matters for the arbitrator, rather than for the trial court,
to decide.

A. What the Standard of Review and Burden Are

 Mandamus is an extraordinary remedy, which will issue only to correct a clear
abuse of discretion or a violation of a duty imposed by law when there is no adequate
remedy by appeal. In re Ford Motor Co., 165 S.W.3d 315, 317 (Tex. 2005) (citing
In re Prudential Ins. Co., 148 S.W.3d 124, 135-36 (Tex. 2004)); Walker v. Packer,
827 S.W.2d 833, 839 (Tex. 1992). A trial court abuses its discretion when it errs in
determining what the law is or in applying the law to the facts. In re Bruce Terminix
Co., 988 S.W.2d 702, 703 (Tex. 1998).

 A party seeking to compel arbitration has the initial burden both (1) to establish
the arbitration agreement's existence and (2) to show that the claims asserted against
the movant fall within the arbitration agreement's scope. In re Kepka, 178 S.W.3d
279, 286 (Tex. App.--Houston [1st Dist.] 2005, orig. proceeding). Here, however,
no one has ever disputed the existence of an agreement to arbitrate: indeed, the Hamm
parties and Millennium have already arbitrated under the same arbitration agreements,
and Brinsden's motion for leave to intervene invoked the arbitration agreements. 
Neither does anyone dispute that the matters that the Hamm parties sought to send to
arbitration--concerning the meaning of section 8.2 and its effect on the distribution
of the partnerships' assets--fell within the scope of the arbitration agreements. See
id. at 287 ("[W]hen, as here, the arbitration agreement uses broad language such as
'arising out of or in any way related or connected to' to define the scope of
arbitrability[,] the moving party must show that the factual allegations against it
'touch matters' covered by the underlying agreement.") (quoting Hou-Scape, Inc. v.
Lloyd, 945 S.W.2d 202, 205-06 (Tex. App.--Houston [1st Dist.] 1997, orig.
proceeding)). 

B. Whether the Trial Court Abused Its Discretion

 Rather than disputing the arbitration agreements' existence, or arguing whether
the contractual matters that the Hamm parties sought to arbitrate fell within the
arbitration provisions' scope, the parties joined the following four issues below: (9)

 whether Millennium's defense of res judicata was a matter for the
court or the arbitrator to determine.


 assuming that the court was the proper entity to determine the res
judicata defense, whether that defense was meritorious.


 whether the issue of estoppel based on Hamm's admissions in the
2003 arbitration was a matter for the court or the arbitrator to
determine.


 assuming that the court is the proper entity to determine this
estoppel defense, whether the Hamm parties were estopped from
denying Brinsden's interests in the partnerships based on
admissions that Hamm had made in the 2003 arbitration.


To these four issues the parties have added four more that are based on the receiver's
distribution of partnership assets during pendency of the appellate proceedings:


 whether the issue of mootness based on distribution of proceeds
is a matter for the court or the arbitrator to determine.


 assuming that the court is the proper entity to determine
mootness, whether the Hamm parties' request for arbitration and
its appellate challenges are mooted by the distribution.


 whether the issue of estoppel based on the Hamm parties' alleged
acceptance of the distribution proceeds was a matter for the court
or the arbitrator to determine.


 assuming that the court is the proper entity to determine this
estoppel defense, whether the Hamm parties are estopped from
"contest[ing] the distribution" because they accepted its benefits. 


 1. Res Judicata and Arbitrability

 In part of issue two, the Hamm parties argue that whether res judicata bars a
second arbitration is a matter for the arbitrator, rather than for the trial court. 
Millennium responds that, because the trial court confirmed the arbitration award,
which thereby became its judgment, the trial court, rather than the arbitrator, properly
granted the stay to protect its own judgment from attack.

 In Howsam v. Dean Witter Reynolds, Inc., the United States Supreme Court
established the paradigm for determining what matters were to be decided by the
arbitrator and what were to be decided by the court. 537 U.S. 79, 84-85, 123 S. Ct.
588, 592 (2002). The Howsam Court concluded that, unless an arbitration agreement
provides otherwise, a court may determine only matters of substantive arbitrability,
i.e., whether a particular dispute falls within the scope of an arbitration provision, as
well as the threshold question of whether that provision is enforceable. Id. at 84, 123
S. Ct. at 592. In contrast, the Court also determined that the arbitrator, rather than the
court, should determine matters of procedural arbitrability, i.e., those matters that
"'grow out of the dispute and bear on its final disposition.'" Id. (quoting John Wiley
& Sons, Inc. v. Livingston, 376 U.S. 543, 557, 84 S. Ct. 909, 918 (1964)). The
Howsam Court offered as examples of matters of procedural arbitrability waiver,
delay, time limits, notice, laches, estoppel, conditions precedent, and like defenses. 
Id. at 84-85, 123 S. Ct. at 592 (quoting Moses H. Cone Mem'l Hosp. v. Mercury
Constr. Corp., 460 U.S. 1, 24-25, 103 S. Ct. 927, 941 (1983) and Revised Uniform
Arbitration Act § 6(c) & cmt. 2, 7 U.L.A. 12-13). The Howsam Court reasoned
that the parties "would likely expect that an arbitrator would decide" such gateway,
procedural-arbitrability matters because these matters grow out of and bear on the
final disposition of the parties' dispute. Id. at 79, 123 S. Ct. at 590. That is, under
the FAA, although courts are empowered to determine whether the dispute should be
resolved in court or in arbitration, arbitrators are empowered "absent an agreement
to the contrary, to resolve disputes over whether a particular claim may be
successfully litigated anywhere at all . . . or has any substantive merits whatsoever." 
Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1109 (11th Cir. 2004).

 Res judicata can apply to bar re-arbitration of matters that have already been
arbitrated. See Jarrod Wong, Court or Arbitrator--Who Decides Whether Res
Judicata Bars Subsequent Arbitration Under the Federal Arbitration Act?, 46 Santa
Clara L. Rev. 49, 54 (2005) [hereinafter "Wong"]. The question remains, however,
whether the court or the arbitrator has the authority under the FAA to determine
whether a later arbitration is barred by a prior one. The Howsam Court set out the test
to apply, but it did not consider how that test applied to the defense of res judicata.

 Although there is no Texas state authority on this issue, federal court decisions
decided under the FAA resolve the dispute. The majority of federal courts has
determined that whether a prior arbitration proceeding is res judicata of a later one is
a matter for the arbitrator to determine, absent the arbitration agreement's providing
that the defense of res judicata is not subject to arbitration. (10) That is, under this
authority, the res judicata effect of a prior arbitration award is a matter of procedural
arbitrability that is not the court's province to decide. 

 The reasoning of these courts is as follows. Res judicata is an affirmative
defense on the merits. See Williams v. Houston Firemen's Relief & Ret. Fund, 121
S.W.3d 415, 437 n.21 (Tex. App.--Houston [1st Dist.] 2003, no pet.). Accordingly,
it is a matter that "grow[s] out of the dispute and bear[s] on its final disposition,"
which under the Howsam Court's paradigm is one of procedural arbitrability. 
Howsam, 537 U.S. at 84, 123 S. Ct. at 592. That is, res judicata is a "component of
the dispute on the merits and must be considered by the arbitrator, not the courts." 
Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1132 (9th Cir. 2000);
accord Nat'l Union Fire Ins. Co. v. Belco Petroleum Corp., 88 F.3d 129, 135-36
(2nd Cir. 1996). Some of these courts have expressly rejected the argument that
requiring an arbitrator to determine the res judicata effect of a prior arbitral award
will allow prior arbitral decisions to be relitigated ad infinitum: they reason that the
parties have the same ability to pursue a res judicata defense before the second
arbitrator as they would have before a court. See Local 103 of Int'l union of
Electrical, Radio & Machine Workers, AFL-CIO v. RCA Corp., 516 F.2d 1336, 1341
(3rd Cir. 1975); accord Little Six Corp. v. United Mine Workers of Am. Local Union
No. 8332, 701 F.2d 26, 29 (4th Cir. 1983); Teamsters Local 623 v. United Parcel
Serv., Inc., 786 F.Supp. 509, 513 (E.D. Pa. 1992); Auto., Petroleum & Allied Indus.
Employees Union, Local 618 v. Gelco Corp., 581 F.Supp. 1155, 1158 (E.D. Mo.
1984) ("If an arbitrator accepts Gelco's preclusion argument and the union continues
to . . . arbitrate the same grievance involving the same parties, then Gelco may sue in
this Court to compel the union to abide by the arbitrator's decision that the prior
award precludes further arbitration.").

 There is a limited exception to the above rule that res judicata is for the
arbitrator. See Wong at 72-79; John Hancock Mut. Fire Life Co. v. Olick, 151 F.3d
132, 139 (3rd Cir. 1998) (using term "exception" to describe this situation). When
the prior judgment that could have preclusive effect arose from a court
proceeding--that is, when the first adjudication was in court, rather than by
arbitration--the court may determine whether res judicata bars a subsequent
arbitration. (11) We refer to this as the "prior-court-judgment exception." The rationale
for the prior-court-judgment exception is that a court is inherently empowered to
protect the integrity and finality of its own prior judgment, and this policy outweighs
even the strong policy in favor of arbitration. Olick, 151 F.3d at 138. 

 Millennium relies on the prior-court-judgment exception, despite the fact that
the first adjudication was by arbitration, not by the court. Millennium implicitly
reasons that because the trial court confirmed the 2003 arbitration award, that award
had the effect of a judgment of the court, which the court could protect by injunction. 
See 9 U.S.C. § 13 (1997) (providing that judgment confirming arbitration award has
same force and effect as court judgment); Tex. Civ. Prac. & Rem. Code Ann.
§ 171.0092(a) (Vernon 2005) (providing that order confirming arbitration award
under TAA "may be enforced in the same manner as any other judgment or decree").


 At least one federal court has expressly rejected the argument that Millennium
makes. See Chiron Corp., 207 F.3d at 1133. And other federal courts have applied
the general procedural-arbitrability rule to a res judicata defense despite the prior
arbitral award's having been confirmed. See Belco Petroleum Corp., 88 F.3d at
135-36 (2nd Cir. 1996) (not discussing prior-court-judgment exception, but applying
general procedural-arbitrability rule despite prior award's confirmation); Basin Elec.
Pow. Coop. v. PPL Energy Plus, L.L.C., 313 F.Supp.2d 1039, 1042 (D.N.D. 2004)
(same). Simply put, the prior-court-judgment exception raises institutional concerns
that are not present when the prior adjudication occurred at arbitration. See Olick,
151 F.3d at 139. This is true even when the prior arbitration award has been
confirmed by court judgment. As the Chiron court explained:

 Relying on the language of [9 U.S.C. section 13], Ortho argues that we
must treat the district court's confirmation of the arbitration award as if
it were a judgment rendered in a judicial proceeding. This approach,
however, begs the question because the statute says nothing about which
forum or who determines the effect of the judgment. Moreover, it
obscures the fact that while a judgment entered upon a confirmed
arbitration award has the same force and effect under the FAA as a court
judgment for enforcement purposes, it is not wholly parallel to a court
judgment for all purposes.


 Indeed, there are fundamental differences between confirmed arbitration
awards and judgments arising from a judicial proceeding. Absent an
objection on one of the narrow grounds set forth [in the FAA], the
[FAA] requires the court to enter judgment upon a confirmed arbitration
award, without reviewing either the merits of the award or the legal
basis upon which it was reached. A judgment upon a decision or order
rendered by the court at the conclusion of a judicial proceeding, by
contrast, confirms the merits of that decision. . . . In sum, a judgment
upon a confirmed arbitration award is qualitatively different from a
judgment in a court proceeding, even though the judgment is recognized
under the FAA for enforcement purposes.


Chiron Corp., 207 F.3d at 1133-34 (emphasis in original; footnote omitted). (12) 
Moreover, if the judicial confirmation of an arbitration award were all that it took to
bootstrap a prior arbitration award into the prior-court-judgment exception, the
limited exception would swallow the general rule.

 Accordingly, we hold that the trial court clearly abused its discretion to the
extent that it based its stay on (1) a determination that res judicata barred arbitration
on the Hamm parties' request or on (2) a determination that a stay was necessary to
protect the integrity of the trial court's order confirming the 2003 arbitration award.

 We sustain this portion of issue two.

 2. Mootness and Arbitrability

 In its briefing in the mandamus proceeding, Millennium argues that the
proceeds' distribution pursuant to the separate distribution order moots the underlying
matters that the Hamm parties seek to send to arbitration and, thus, the mandamus
proceeding. (13) Under part of issue two, the Hamm parties argue that whether the
proceeds' distribution moots a second arbitration is itself a matter for the arbitrator,
rather than for the trial court.

 Although there is no Texas authority on this issue, federal authority does exist,
and it consistently holds that whether matters sought to be arbitrated are in fact moot
is a question of procedural arbitrability that is reserved for the arbitrator, absent the
parties' agreement to the contrary. (14) Because the issue of whether subsequent events
have rendered the Hamm parties' arbitration filing moot is for the arbitrator, that
matter is not for any court to determine. Because a court may not determine whether
the pending arbitration is moot, we may not hold that this mandamus proceeding is
moot. Put another way, because the order staying arbitration prevented the matter of
section 8.2's interpretation from going to arbitration, and because the arbitrator alone
may determine whether the matter submitted for arbitration is moot, there is still a live
controversy before this Court.

 We sustain this portion of issue two.

 3. Estoppel and Arbitrability

 Under part of issue two, the Hamm parties also argue that Millennium's and
Brinsden's separate estoppel defenses, set out above, are matters for the arbitrator,
rather than for the trial court.

 The United States Supreme Court has already indicated that questions of
estoppel are matters of procedural arbitrability under the FAA that are for the
arbitrator, rather than for the court. See Howsam, 537 U.S. at 84-85, 123 S. Ct. at
592 (quoting Moses H. Cone Mem'l Hosp., 460 U.S. at 24-25, 103 S. Ct. at 941and
Revised Uniform Arbitration Act § 6(c) & cmt. 2, 7 U.L.A. 12-13); accord
Boateng v. Gen. Dynamics Corp., 473 F. Supp.2d 241, 250 (D. Mass. 2007); In re
Global Constr. Co., 166 S.W.3d 795, 798 (Tex. App.--Houston [14th Dist.] 2005,
orig. proceeding) (citing, in dictum, Howsam's mention of estoppel's being matter of
procedural arbitrability). We follow Howsam and hold that the trial court clearly
abused its discretion if it based its stay on a determination of the estoppel grounds
argued by Millennium and Brinsden.

 We sustain this portion of issue two.

C. Whether the Remedy by Appeal is Adequate

 The order staying the arbitration that the Hamm parties instigated with the
AAA was clearly erroneous for the reasons stated above. We further hold that no
adequate remedy by appeal exists for the order. First, the order is interlocutory
because the receivership has not been wound up, and, for the reasons stated above,
the order is not appealable under the TAA or other statute. Second, no one disputes
that the partnership agreements' arbitration provisions encompass, in the abstract, the
subject matter that the Hamm parties seek to arbitrate: a dispute concerning the
meaning of the distribution provisions of the partnership agreements. Third, the
Hamm parties have no means of arbitrating that dispute in the face of a stay of the
arbitration that they instigated to determine that dispute. Accordingly, we hold that
no adequate remedy by appeal exists from the portion of the trial court's May 12,
2006 order that stayed the arbitration initiated by the Hamm parties as result of their
May 4, 2006 arbitration demand.

Conclusion


 We dismiss the interlocutory appeal in cause number 01-06-00499-CV. We
conditionally grant mandamus relief in cause number 01-06-00470-CV. The trial
court is ordered to vacate that portion of its May 12, 2006 order that stays any
arbitration proceedings based on the Hamm parties' May 4, 2006 demand. (15) We are
confident that the trial court will comply with our determination; writ will issue only
if the court fails to so comply.


 Tim Taft

 Justice


Panel consists of Justices Taft, Jennings, and Alcala.
1. Brinsden was not a party to that arbitration.
2. Section 8.2 governed the distribution of the partnership assets upon
dissolution.
3. In its objection, Millennium argued that the receiver's report had erroneously
calculated and interpreted the partnership agreements' "Priority Return"
provision. In his objection, Brinsden disagreed with Mitchell's delineation of
the evidence of his entitlement to capital distribution and Mitchell's conclusion
that Brinsden was a limited partner without any interest in the distribution of
the capital proceeds.
4. On April 6, 2006, the Hamm parties also filed a new lawsuit in the 280th
District Court of Harris County, Texas (trial court cause number 2006-21912),
seeking a declaratory judgment to resolve the same issues ("the second
lawsuit"). The record implies that the second lawsuit was eventually
transferred to the trial court that rendered the complained-of order in the instant
lawsuit, although no such transfer order appears in the record. 
5. See 9 U.S.C.A. §§ 1-16 (West 2000 & Supp. 2006).
6. See Tex. Civ. Prac. & Rem. Code Ann. §§ 171.001-.098 (Vernon 2005).
7. The Hamm parties do not complain of the portion of the order staying the
second lawsuit; rather, they complain before this Court only of the portion of
the order that stayed the AAA arbitration proceedings. Therefore, the propriety
of the trial court's having stayed the second lawsuit is not before us. See Tex.
Civ. Prac. & Rem. Code Ann. § 51.014(a) (Vernon 1997 & Supp. 2006) (not
listing interlocutory order staying another lawsuit as one for which
interlocutory appeal is granted); id. § 171.098 (Vernon 2005) (same).
8. For this reason, we overrule the Hamm parties' issue one, in which they argue
that "the trial court abused its discretion by denying a motion to compel
arbitration of disputes that were subject to an arbitration agreement." The
Hamm parties' motion to compel arbitration remains pending before the trial
court.
9. On appeal, Millennium asserts that the Hamm parties waived the right to
enforce arbitration by their substantial invocation of the judicial process to
Millennium's detriment. Millennium then argues that whether the Hamm
parties thereby waived the right to arbitrate was a matter for the court to
determine, rather than for the arbitrator. However, Millennium did not assert
this type of waiver as a ground in its motion to stay, and the matter does not
appear to have been litigated by anyone below. For example, no one expressly
argued below as to how the Hamm parties' invocation of the judicial process
was substantial for purposes of this type of waiver, and no one offered
evidence as to how that invocation had been detrimental to Millennium. 
Accordingly, such waiver will not form the basis for this Court's disposition. 
See Bates v. MTH Homes-Tex., L.P., 177 S.W.3d 419, 422 (Tex.
App.--Houston [1st Dist.] 2005, no pet., orig. proceeding) (combined
interlocutory appeal and original proceeding) ("The trial court's order does not
state its grounds for granting Hammonds' motion to compel arbitration. Thus,
we review the grounds stated in Hammonds' motion and affirm the trial court's
order if any of the grounds are meritorious.") (emphasis added); cf. Flores v.
State, 177 S.W.3d 8, 14 (Tex. App.--Houston [1st Dist.] 2005, pet. ref'd) ("We
must sustain the trial court's [suppression] ruling if it is reasonably supported
by the record and is correct on any theory of law applicable to the case.")
(emphasis added), cert. denied, 126 S. Ct. 2298 (2006).
10. See Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1109-10 (11th Cir.
2004) (dictum)
; Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126,
1132-33 (9th Cir. 2000); Indep. Lift Truck Builders Union v. NACCO
Materials Handling Group, Inc., 202 F. 3d 965, 968 (7th Cir. 2000); John
Hancock Mut. Fire Life Co. v. Olick, 151 F.3d 132, 139-40 (3rd Cir. 1998);
Nat'l Union Fire Ins. Co. v. Belco Petroleum Corp., 88 F.3d 129, 135-36 (2nd
Cir. 1996); Chicago Typographical Union No. 16 v. Chicago Sun-Times, Inc.,
860 F.2d 1420, 1424 (7th Cir. 1988) (dictum); Transit Mix Concrete Corp. v.
Local Union No. 282, Int'l Brotherhood of Teamsters, Chauffeurs,
Warehousemen & Helpers of Am., 809 F.2d 963, 969-70 (2nd Cir. 1987);
Butler Armco Indep. Union v. Armco, Inc., 701 F.2d 253, 255-56 (3rd Cir.
1983); Little Six Corp. v. United Mine Workers of Am. Local Union No. 8332,
701 F.2d 26, 29 (4th Cir. 1983); Boston Shipping Ass'n, Inc. v. Int'l
Longshoremen's Ass'n, 659 F.2d 1, 3 (1st Cir. 1981); Local 103 of Int'l Union
of Electrical, Radio & Machine Workers, AFL-CIO v. RCA Corp., 516 F.2d
1336, 1340 (3rd Cir. 1975); New Orleans Steamship Ass'n v. Gen. Longshore
Workers, 626 F.2d 455, 468 (5th Cir. 1980), aff'd on other grounds, 457 U.S.
702, 102 S. Ct. 2672 (1982); Steris Corp. v. Int'l Union, Auto., Aerospace,
Agric. Implement Workers of Am., Local No. 832, Civ. Act. No. 06-83E, 2007
WL 1087779, at *10 (W.D. Pa. Apr. 9, 2007); Basin Elec. Pow. Coop. v. PPL
Energy Plus, L.L.C., 313 F. Supp. 2d 1039, 1042 (D.N.D. 2004); N. River Ins.
Co. v. Allstate Ins. Co., 866 F. Supp. 123, 129 (S.D. NY 1994); Teamsters
Local 623 v. United Parcel Serv., Inc., 786 F. Supp. 509, 512-13 (E.D. Pa.
1992); Auto., Petroleum & Allied Indus. Employees Union, Local 618 v. Gelco
Corp., 581 F. Supp. 1155, 1158 (E.D. Mo. 1984); see also Local 616, Int'l
Union of Elec., Radio & Machine Workers, AFL-CIO v. Byrd Plastics, Inc.,
428 F.2d 23, 26 (3rd Cir. 1970). But see San Francisco Elec. Contractors
Ass'n v. Int'l Brotherhood of Elec. Workers, Local No. 6, 577 F.2d 529,
533-34 (9th Cir. 1978).
11. John Hancock Mut. Fire Life Co. v. Olick, 151 F.3d 132, 137-38 (3rd Cir.
1998); In re Y&A Gr. Secs. Litig., 38 F.3d 380, 382-83 (8th Cir. 1994); Miller
Brewing Co. v. Fort Worth Distrib. Co., 781 F.2d 494, 499 (5th Cir. 1986). 
The opinions adopting the "prior-court-judgment exception" mainly predate
Howsam. We do not determine what effect, if any, Howsam may have had on
this line of authority. Compare Wong at 72-79 (recognizing prior-court-judgment exception and arguing why exception makes sense) with Klay, 376
F.3d at 1101 (recognizing, on basis of Howsam, abrogation of pre-Howsam
authority of Kelly v. Merrill Lynch, Pierce, Fenner & Smith, 985 F.2d 1067
(11th Cir. 1993), in which Eleventh Circuit Court of Appeals had applied prior-court-judgment exception).
12. The Chiron court's rationale applies equally well to arbitration awards
confirmed under the TAA because the language of both statutes is materially
similar in this regard. Compare 9 U.S.C. § 13 with Tex. Civ. Prac. & Rem.
Code Ann. § 171.0092(a). 
13. Although not a party to the appeal, Mitchell, the receiver, has filed a brief
arguing that the mandamus proceeding is moot except for the $800,000
remaining in the partnership accounts.
14. See Oil, Chem. & Atomic Workers Int'l Union Loc. 5-391 v. Conoco, Inc., 64
Fed.Appx. 178, 184-85 (10th Cir. 2003); Local Union No. 370 of Int'l Union
of Operating Eng'rs v. Morrison-Knudsen Co., 786 F.2d 1356, 1358 (9th Cir.
1986); W. Automatic Mach. Screw Co., Div. of Standard Screw Co. v. Int'l
Union, United Auto., Aircraft & Agric. Implement Workers of Am. (UAW-AFL-CIO), 335 F.2d 103, 106 (6th Cir. 1964); Galveston Maritime Ass'n v. S.
Atlantic & Gulf Coast Dist., Int'l Longshoremen's Ass'n, Local 307, 234
F.Supp. 250, 252 (S.D. Tex. 1964); see also Klay, 376 F.3d at 1109-10 (noting
that matters of "justiciability" are for arbitrator, absent agreement to contrary);
cf. Chicago Typographical Union No. 16, 860 F.2d at 1424 (indicating in
dictum that standing--which is component of subject-matter jurisdiction--is
matter of procedural arbitrability).
15. Again, the propriety of the portion of the complained-of order that stayed the
second lawsuit is not before us, and mandamus will not issue for that aspect of
the order. We also again note that because the trial court has yet to rule on the
Hamm parties' motion to compel arbitration, that motion remains pending
before the trial court.