WMS, INC., Plaintiff v. ALLTEL CORPORATION and
ALLTEL COMMUNICATIONS, INC., Defendants

No. COA06-793

(Filed 7 August 2007)

**Collateral Estoppel and Res Judicata— arbitration award—
preclusive effect to be determined by arbitrator, not court**

In the context of the Federal Arbitration Act, the issues of res
judicata and collateral estoppel based upon a. prior arbitration
proceeding must be decided initially by the arbitrator and not the
trial court.

Appeal by plaintiff from order entered 20 January 2006 by Judge
Richard L. Doughton in Wilkes County Superior Court. Heard in the
Court of Appeals 6 March 2007.

*Taylor Penry Rash & Reimann, PLLC, by J. Anthony Penry and
Cynthia A. O'Neal, for plaintiff-appellant (allowed as substi-
tute counsel by order filed 11 January 2007 and filed Plaintiff-
Appellant's Reply Brief on 12 February 2007; Record on Appeal
and Plaintiff-Appellant's Brief filed by Herring, McBennett,
Mills & Finkelstein, P.L.L.C., by Mark A. Finkelstein and J.
Aldean Webster III, allowed to withdraw as attorney of record
by order filed 11 January 2007).*

*Womble Carlyle Sandridge & Rice, P.L.L.C., by Pressly M.
Millen, for defendants-appellees.*

JACKSON, Judge.

WMS, Inc. ("plaintiff") appeals from an order of the trial court dis-
missing its complaint "on the basis of res judicata and/or collateral
estoppel." For the reasons stated herein, we reverse the ruling of the
trial court.

The procedural history of the instant case is complex, stemming
from two separate lawsuits filed against Alltel Corporation and Alltel
Communications, Inc. (collectively, "defendants").

With respect to the former case, Cellular Plus ("Cellular Plus")
and defendants entered into a dealer agreement ("the dealer agree-
ment") on 4 June 1999, which provided that Cellular Plus would mar-
ket defendants' wireless cellular communication services in ex-

change for payment of commissions. On 19 December 2000, plaintiff, Cellular Plus, and David Kilpatrick ("Kilpatrick") filed suit against defendants and Jerry Weaver ("Weaver") asserting various claims arising out of business dealings between the parties, including a claim for breach of contract for failing to make commission payments as well as a claim for unfair and deceptive trade practices. On 8 January 2001, defendants and Weaver moved to compel arbitration pursuant to the dealer agreement, and on 15 February 2001, the trial court entered an order concluding that all claims alleged were governed by the arbitration clause.

Thereafter, on 23 December 2002, a three-member arbitration panel issued an interim award dismissing all claims asserted by plaintiff and Kilpatrick, as well as all claims asserted against Weaver. The arbitrators concluded that defendants had breached the dealer agreement and had engaged in unfair and deceptive trade practices. On 31 January 2003, the arbitrators issued a final award awarding Cellular Plus treble damages in the amount of $2,887,500.00 and attorneys' fees in the amount of $352,640.00.

On 3 February 2003, defendants filed a motion in Wake County Superior Court requesting that the court (1) vacate the arbitrators' awards on the grounds that the arbitrators exceeded their powers in awarding treble damages and attorneys' fees; or in the alternative, (2) eliminate the treble damages or attorneys' fees. On 13 February 2003, Cellular Plus moved to confirm the interim and final awards. The trial court held that the agreement did not give the arbitration panel the authority to award treble damages and attorneys' fees, but found that defendants had failed to preserve their argument challenging the attorneys' fees. Therefore, by order entered 24 April 2003, the court modified the amount of damages to $962,500.00 and upheld the attorneys' fees as awarded. Thereafter, Cellular Plus filed notice of appeal from the trial court's order to vacate treble damages, and defendants filed notice of cross-appeal from the court's order confirming attorneys' fees and actual damages.

On 5 October 2004, this Court held that the Federal Arbitration Act ("FAA") governed the issues on appeal because the contract involved or affected commerce. See WMS, Inc. v. Weaver (Weaver I), 166 N.C. App. 352, 358, 602 S.E.2d 706, 710, disc. rev. denied, 359 N.C. 197, 608 S.E.2d 330 (2004). Although this Court noted that the FAA allows a court to vacate an award "where the arbitrators exceeded their powers," id. (quoting 9 U.S.C. § 10(a)(4) (2000)), we held that the parties' arbitration agreement was ambiguous and that the arbi-

trators had the authority to construe the remedial provision of the agreement. *Id.* at 366, 602 S.E.2d at 715. Accordingly, this Court held that the trial court erred in modifying the arbitrators' award. *Id.*[1]

With respect to the instant case, plaintiff incorporated in early 2000 for the purpose of taking over Cellular Plus' sub-dealer network. Cellular Plus assigned its sub-dealer contracts to plaintiff, and beginning 1 May 2000, plaintiff entered into a series of agreements with defendants to procure cellular telephone customers for defendants in exchange for the payment of commissions. On 2 July 2001, plaintiff and defendants signed a Communication Services Agent Agreement, which detailed the terms of their business association and included an arbitration clause. The arbitration clause in this agreement was substantially similar to the arbitration provision at issue in the original dispute between Cellular Plus and defendants. *See id.* at 354, 602 S.E.2d at 707-08.

On 29 September 2005, plaintiff filed a complaint against defendants, stating four claims for relief: (1) unfair and deceptive practices; (2) unjust enrichment; (3) unjust impoverishment; and (4) breach of the covenant of good faith and fair dealing. In its complaint, plaintiff alleged that beginning on 1 October 2001, defendants punished plaintiff for plaintiff's role in the arbitration through which Cellular Plus had been awarded damages against defendants. Specifically, plaintiff alleged that defendants refused to provide plaintiff with the same, improved contract terms that defendants granted to all of its other agents in North Carolina. Plaintiff alleged that as a result of defendants' conduct, plaintiff received lower rates of commission than all of defendants' other agents and lost sales because it has less money (1) to subsidize the cost of new cellular phones to encourage customers to activate cellular service through plaintiff; (2) to attract and retain

---

1. We note that the litigation in COA03-1063 did not end with this Court's opinion. On 2 December 2005, defendants tendered a check as payment for the judgment in the amount of $3,960,960.19, which represented the original judgment plus eight percent interest. The check was made jointly payable to multiple payees, including plaintiff who refused to endorse the check because of other pending litigation. In addition, the check was $715.00 less than the full payment of the judgment. On 16 December 2005, defendants issued another check, this time payable to the Wake County Clerk of Superior Court, in the amount of $3,961,675.19—the amount owed on 2 December 2005 plus the $715.00 that had not been included in the prior check. On 22 December 2005, defendants filed a motion in the cause, requesting that the trial court declare and mark the judgment satisfied in full. The trial court allowed the motion, and on 15 May 2007, this Court affirmed the trial court's decision to allow defendants' motion in the cause. *See WMS, Inc. v. Weaver (Weaver II)*, No. COA06-723, 2007 N.C. App. LEXIS 1038 (N.C. Ct. App. May 15, 2007).

good cellular phone sales personnel; and (3) to motivate cellular phone service salespeople to close cellular phone transactions. In its complaint, plaintiff also included a motion to compel arbitration, seeking an order from the trial court compelling the dispute to arbitration before the American Arbitration Association ("AAA").

On 2 December 2005, defendants filed a Rule 12(b)(6) motion to dismiss, asserting that the instant action was barred by the doctrines of *res judicata* and collateral estoppel. Specifically, defendants based their *res judicata* argument on the 24 April 2003 judgment entered in the previous case, which confirmed the interim and final arbitration awards, dated 23 December 2002 and 31 January 2003, respectively, in which the arbitrators dismissed all claims asserted by plaintiff against defendants. On 20 January 2006, the trial court granted defendants' motion to dismiss, and thereafter, plaintiff filed timely notice of appeal.

On appeal, plaintiff contends that the trial court erred in determining that the instant case is precluded on the bases of *res judicata* and collateral estoppel. In the alternative, plaintiff contends that the issue of *res judicata* was a matter that should have been determined in arbitration, not by the trial court.

"Under the doctrine of res judicata or 'claim preclusion,' a final judgment on the merits in one action precludes a second suit based on the same cause of action between the same parties or their privies." *Whitacre P'ship v. Biosignia, Inc.*, 358 N.C. 1, 15, 591 S.E.2d 870, 880 (2004). This Court recently explained that "[f]or defendants to establish that a plaintiff's claim is barred by res judicata, they 'must show (1) a final judgment on the merits in an earlier suit, (2) an identity of the cause of action in both the earlier and the later suit, and (3) an identity of parties or their privies in the two suits.' " *Gregory v. Penland*, 179 N.C. App. 505, 510, 634 S.E.2d 625, 629 (2006) (quoting *Erler v. Aon Risks Servs., Inc.*, 141 N.C. App. 312, 316, 540 S.E.2d 65, 68 (2000), *disc. rev. denied*, 548 S.E.2d 738 (2001). As this Court has noted, " '[t]he doctrine of res judicata applies to a judgment entered on an arbitration award as it does to any other final judgment.' " *Moody v. Able Outdoor, Inc.*, 169 N.C. App. 80, 85, 609 S.E.2d 259, 262 (2005) (quoting *Rodgers Builders, Inc. v. McQueen*, 76 N.C. App. 16, 22, 331 S.E.2d 726, 730 (1985), *disc. rev. denied*, 315 N.C. 590, 341 S.E.2d 29 (1986)). "Under the companion doctrine of collateral estoppel [or issue preclusion], . . . the determination of an issue in a prior judicial or administrative proceeding

precludes the relitigation of that issue in a later action, provided
the party against whom the estoppel is asserted enjoyed a full and
fair opportunity to litigate that issue in the earlier proceeding."
*Whitacre P'ship*, 358 N.C. at 15, 591 S.E.2d at 880. In explaining the
relationship between *res judicata* and collateral estoppel, our
Supreme Court has noted that

> [w]hereas res judicata estops a party or its privy from bringing a
> subsequent action based on the "same claim" as that litigated in
> an earlier action, collateral estoppel precludes the subsequent
> adjudication of a previously determined issue, even if the subse-
> quent action is based on an entirely different claim. The two doc-
> trines are complementary in that each may apply in situations
> where the other would not and both advance the twin policy
> goals of protecting litigants from the burden of relitigating previ-
> ously decided matters and promoting judicial economy by pre-
> venting needless litigation.

*Id.* (internal quotation marks and citations omitted).

Before determining whether the trial court correctly ruled that
the instant case is barred by *res judicata* and/or collateral estoppel,
however, we first must evaluate plaintiff's second argument on
appeal—namely, whether the issue of preclusion should have been
decided by the arbitrator or the trial court. A threshold question for
this issue, in turn, is whether the Federal Arbitration Act ("FAA") or
the North Carolina Uniform Arbitration Act ("NCUAA") governs the
instant case.

As this Court noted in the prior case between Cellular Plus and
defendants,

> [t]his question cannot be bypassed as the FAA preempts conflict-
> ing state law, including state law addressing the role of courts in
> reviewing arbitration awards. If the FAA requires that a particu-
> lar question be determined by the arbitrators, while state law
> would allow a court to address the issue, the FAA controls. We
> must, therefore, first determine whether the parties' arbitration
> agreement falls under the FAA.

*Weaver I*, 166 N.C. App. at 357-58, 602 S.E.2d at 710 (internal citation
omitted). As this Court recognized, "[t]he FAA governs any 'contract
evidencing a transaction involving commerce.' " *Id.* at 358, 602 S.E.2d
at 710 (quoting 9 U.S.C. § 2). Ultimately, although the parties did not
contest the trial court's determination that the FAA governs the con-

tract at issue, this Court saw "no basis in the record for any conclusion other than that the contract at issue evidences a transaction involving commerce." *Id.* Therefore, this Court held that the FAA governed the issues on appeal. *See id.*

In the case *sub judice,* the "Communication Services Agent Agreement" between plaintiff and defendants is substantially the same agreement as the "Non-Exclusive Wireless Communications Services Agent Agreement" between Cellular Plus and defendants in the prior case. Much as the contract between Cellular Plus and defendants, the instant contract between plaintiff and defendants also "evidenc[es] a transaction involving commerce." *See id.* (quoting 9 U.S.C. § 2).[2] Thus, as we stated in *Weaver,* "we see no basis in the record for any conclusion other than that the contract at issue evidences a transaction involving commerce. The FAA, therefore, controls." *Id.*

In arguing that the preclusive effect of the prior arbitration was an issue properly decided by the trial court, defendants cite to *Rodgers Builders, Inc.,* 76 N.C. App. 16, 331 S.E.2d 726. In *Rodgers,* this Court held that "[t]he scope of an arbitration award and its res judicata effect are matters for judicial determination; therefore, whether plaintiff's claims are barred was for the superior court to determine." *Rodgers Builders, Inc.,* 76 N.C. App. at 23, 331 S.E.2d at 730. However, this Court in *Rodgers* was interpreting state law—specifically, the NCUAA—and as the instant case is governed by the FAA, *Rodgers* is inapposite.

Defendants also quote from *Kelly v. Merrill Lynch, Pierce, Fenner & Smith,* 985 F.2d 1067 (11th Cir.), *cert. denied,* 510 U.S. 1011, 126 L. Ed. 2d 565 (1993), in which the Eleventh Circuit rejected the contention that *res judicata* was an issue to be decided by the arbitrators, and instead held that "the better rule is that courts can decide res judicata." *Kelly,* 985 F.2d at 1069. Subsequently, however, the Eleventh Circuit expressly disavowed the holding in *Kelly* to the extent it conflicted with the United States Supreme Court's opinion in *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 154 L. Ed. 2d 491 (2002). *See Klay v. United Healthgroup, Inc.,* 376 F.3d 1092, 1109 (11th Cir. 2004) ("Under the approach taken in the Supreme Court's

---

2. As this Court noted, "involving commerce" is synonymous with "affecting commerce" and thus "is broader than the term 'in commerce' and 'signals an intent to exercise Congress' commerce power to the full.' " *Weaver I,* 166 N.C. App. at 358, 602 S.E.2d at 710 (quoting *Allied-Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 277, 130 L. Ed. 2d 753, 766 (1995)).

**WMS, INC. v. ALLTEL CORP.**

[185 N.C. App. 86 (2007)]

subsequent decision in *Howsam,* . . . the *Kelly* . . . court[] erred in considering the *res judicata* issue.").

In *Howsam,* the Supreme Court held that under the FAA,

[p]rocedural questions which grow out of the dispute and bear on its final disposition are presumptively *not* for the judge, but for an arbitrator, to decide. So, too, the presumption is that the arbitrator should decide allegations of waiver, delay, or a like defense to arbitrability. . . . In the absence of an agreement to the contrary, issues of substantive arbitrability . . . are for a court to decide and issues of procedural arbitrability, *i.e.,* whether prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide.

*Howsam,* 537 U.S. at 84-85, 154 L. Ed. 2d at 498 (emphasis in original) (internal quotation marks and citation omitted). Therefore, "[g]ateway arbitrability issues . . . are generally for the arbitrators themselves to resolve." *Klay,* 376 F.3d at 1109. Viewing *res judicata* as a "gateway arbitrability" issue, the *Klay* court held that trial courts are without authority to "enjoin arbitration on res judicata grounds because res judicata [i]s for the arbitrator to decide in the first instance." *Id.; see also Nicor Int'l Corp. v. El Paso Corp.,* 292 F. Supp. 2d 1357, 1369 (S.D. Fla. 2003) (noting that in the Eleventh Circuit, it is well-settled that "a res judicata defense is to be raised and decided by the arbitrator in the first instance; and that only if the arbitrator ignores the defense would it then be appropriate for the court to vacate an arbitration award.").[3]

The weight of authority supports the Eleventh Circuit's conclusion that the issue of *res judicata*—and by analogy, collateral estoppel—based upon a prior arbitration proceeding is a legal defense and as such, an issue that must be considered by the arbitrator, not the court. *See Triangle Constr. & Maint. Corp. v. Our V.I. Labor Union,* 425 F.3d 938, 947 (11th Cir. 2005) (citing *Klay,* 376 F.3d at 1109); *Basin Elec. Power Coop. v. PPL Energy Plus, L.L.C.,* 313 F. Supp. 2d 1039, 1042 (D.N.D. 2004); *Hoover v. Prudential Secs., Inc.,* 285 F. Supp. 2d 1073, 1075 n.1 (S.D. Ohio 2003); *see also Chiron Corp. v.*

---

3. Notably, our research discloses no North Carolina state or federal cases which are dispositive on the points of law addressed in this opinion. Therefore, we look to other jurisdictions for persuasive authority to guide us in reaching our decision. *See Skinner v. Preferred Credit,* 172 N.C. App. 407, 413, 616 S.E.2d 676, 680, *aff'd,* 361 N.C. 114, 638 S.E.2d 203 (2006).

*Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1132 (9th Cir. 2000) (decided pre-*Howsam*); *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 140 (3d Cir. 1998) (same); *Nat'l Union Fire Ins. Co. v. Belco Petroleum Corp.*, 88 F.3d 129, 135 (2d Cir. 1996) (same). This accords with the federal policy favoring arbitration:

> The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 74 L. Ed. 2d 765, 785 (1983). Therefore, we hold that, in the context of the FAA, the issues of *res judicata* and collateral estoppel must be decided initially by the arbitrator and not the trial court.[4] Accordingly, the trial court erred in granting defendants' Rule 12(b)(6) motion to dismiss.

Reversed and Remanded.

Judges WYNN and STEELMAN concur.

---

4. The fact that the trial court entered an order confirming the arbitration award does not change our holding. As other courts have explained, "a judgment upon a confirmed arbitration award is qualitatively different from a judgment in a court proceeding, even though the judgment is recognized under the FAA for enforcement purposes." *Chiron Corp.*, 207 F.3d at 1133-34. Thus, the preclusive effect of an arbitration award on a subsequent arbitration, even when the former is confirmed by a judicial order, is an arbitrable issue to be decided by the arbitrator, not the court. *See id.* at 1134.